JOHN L. WOODS *v.* JAMES SCOTT, BEZALEEL GILLETT, and PORTUS BAXTER.

*(In Chancery.)*

A debtor takes a bond to a third person, for a deed of certain lands, on his paying a sum therein mentioned, and erects buildings thereon. The interest of the debtor in the land may be levied on, unless such third person shows some legal or equitable claim thereto.

An attachment of such land is notice to the obligor in the bond of the claim of the creditor, and after that he could only be justified in deeding to the obligee.

When, after such attachment, the obligor deeds the land to another for the benefit of the debtor, and receives notes or securities therefor, he holds them, after the payment of his own claims, for the benefit of the attaching creditor who has obtained a judgment and levied an execution on the lands attached.

If the person, in whose name the bond is taken, neither claims nor sets up any right to the premises, and there is no proof that he has any legal or equitable right or claim thereto as against the debtor, a decree will pass that the obligor pay whatever sum may be in his hands to the creditor.

THIS was an appeal from a decree of the court of chancery.

The orator, in his bill, set forth and charged, in substance,

that on or about the first day of January, 1830, the defendant, Scott, contracted to purchase of the defendant, Baxter, and Baxter agreed to sell and convey to Scott, about two acres of land, situated in Derby, in the county of Orleans, (describing it;) that, in order to enjoy the benefit of said premises and avoid the payment of debts due from Scott to the orator, Scott took a bond from Baxter to the defendant, Gillett, conditioned that if Gillett should pay to Baxter $1719.00, and also the rent of said premises, annually, then Baxter should convey the premises to Gillett, and that said contract was for the sole use and benefit of Scott; that Scott immediately took possession of the premises, under said contract, and, at his own expense and cost and for his own use and benefit, erected and built a tavern house, and other buildings thereon, of the value of two thousand dollars; that Scott, at the time of making said contract with Baxter, was indebted to the orator, and the orator, in August, 1834, attached said land and buildings as the property of Scott, on two writs in the orator's favor against Scott, and recovered judgments in said suits, took out executions on said judgments, and, in May, 1835, caused them to be levied upon an undivided portion of said premises in satisfaction of said executions; that, after the attachment of the premises, and before levying the executions, to wit, on or about the first of February, 1835, Scott, to avoid the payment of said judgments and prevent the orator from collecting them, surrendered to Baxter the bond given to Gillett, as above stated, to be cancelled; that Baxter received the bond and paid Scott one thousand dollars for the improvements so made by him, retaining, at the same time, a large portion of the value of said improvements to await the event of, and as an indemnity against said suits in favor of the orator, or took an indemnity from Scott against said suits, and that Scott immediately afterwards left the state with his family and effects, and had not returned;—that six months had elapsed after said levies of said executions, and that the premises levied upon had not been redeemed, and praying that the defendant, Baxter, might be decreed to pay to the orator the amount of said executions and interest, together with the officer's fees, or deed to the orator the premises so set off on said executions; or that he deed to the orator the whole of said

premises, except the portion levied upon, on the orator's paying to him the amount due to him at the time of the orator's attachment of said premises, and for further relief.

The bill was filed December 7, 1836, and was taken *pro confesso* as to the defendants, Scott and Gillett. The defendant, Baxter, answered the bill, and, in his answer, alleged that sometime in October or November, 1829, one Myron Leslie, then of Derby in this state, now of Jacksonville in the state of Illinois, applied to this defendant on behalf of the defendant, Gillett, to contract for and purchase of him for said Gillett the premises called the tavern stand at Derby Line, stating that he was the agent and attorney of Gillett, and was by him authorized and requested so to do, which are the same premises described in the orator's bill of complaint; that sometime in January, 1830, this defendant contracted the said premises to Gillett, and then had, from Leslie, acting for and in behalf of Gillett, strong assurances that Gillett would pay this defendant the money for said premises within two years from that time, together with the annual rent hereinafter set forth ; that, upon that occasion, this defendant then executed and delivered to Leslie, as the agent of Gillett, a bond to convey the premises to Gillett upon the condition that, when Gillett should pay this defendant the sum of $1400.00, and an annual rent therefor of $168.00 each and every year until the first named sum was fully paid, then this defendant would convey the premises to Gillett; that the bond was made directly to Gillett, and according to this defendant's best knowledge, information, and belief, was for the benefit of Gillett; that this defendant had no bargaining or dealing with Scott relative to said premises in any manner whatever, nor was Scott known to this defendant as taking any part or having any interest in the contract; that, sometime in the winter of 1830, Scott removed on to the premises, and, as this defendant understood and believed, under the said Gillett, and improvements were thereon made which were superintended and directed in part by Scott and in part by Leslie, both of whom resided thereon ; that a new tavern house and other out-buildings, and a lawyer's office, were erected thereon, but at whose expense this defendant was ignorant and unable to state ; that all the improvements put thereon were, in the estimation of this defendant, of the

value of $2000 ; that, at the time of the orator's attachment, this defendant is not aware nor does he know that Scott had any interest in said premises and improvements whatever, or that he had any at any time afterwards ; that he does not know, nor believe that Scott ever had said bond or contract, and that this defendant never had any agreements, bargains, or connection with Scott, relative to the premises, in any manner whatever, nor did Scott pay to this defendant any thing upon said bond, or to his knowledge have any interest therein ; that this defendant did not pay to Scott, nor to any other person, any sum upon said bond being given up ; that he did not retain any portion of the value of the improvements put upon said place, or ever have or receive any thing therefor ; that he never received any indemnity from, or on account of, the orator's said attachments, nor did he make any arrangement whatever relating thereto, and, as he never had any thing to do, nor any connection,. with Scott in the business, and was wholly ignorant that Scott had any interest therein, he did not know or believe that in his contract with Gillett, he had the right or power to pay any regard to the orator's attachments ; that Scott removed from this state in the winter of 1835 ; that, on the 5th day of March, 1835, and after Scott had left this state, one John Doolittle came with Leslie, as agent for Gillett, to this defendant, at Derby Line, and informed this defendant that said Doolittle had purchased the premises and tavern house of Gillett, provided Doolittle could arrange to pay this defendant what Gillett was owing him for the premises ; that this defendant then and there agreed with Gillett, through his agent as aforesaid, and the said Doolittle, to take the security of Doolittle for the sum of twenty one hundred dollars, the sum then due from Gillett to this defendant for the premises, and the bond this defendant gave said Gillett was thereupon given up to this defendant to be cancelled by the said Leslie, acting as agent as aforesaid ; that this defendant then and there executed and delivered a bond to Doolittle to convey to him the aforesaid premises upon the payment of said sum of twenty one hundred dollars and the payment of an annual rent for the premises until said sum should be fully paid ; that this defendant was then and there informed and believed that Doolittle paid, or secured to be paid, to Gillett the residue of

the value of said premises, including the improvements; that, sometime in March, 1837, this defendant was, by said Doolittle, fully paid said sum of twenty one hundred dollars, and the rent of said premises, and, by order of said Doolittle, this defendant deeded the premises, with the usual covenants of seizin and warranty, to one Gardner Chase.

This answer was traversed, and testimony was taken. Among the witnesses who testified were Myron Leslie, the person who acted as agent for Gillett, named in the answer, and Charles Edmunds, whose testimony is referred to in the opinion of the court. The facts found by the court sufficiently appear in the opinion.

*Cooper, Redfield, Underwood* and *L. B. Peck*, for orator.

The first question arising in the case is, was Scott the party beneficially interested in the contract with Baxter? The bill charges that Gillett was a mere trustee of Scott, and that the latter was the purchaser and owner of the property; that the improvements were made by him on his own account and at his own expense, and that Gillett had no interest therein. These facts are admitted by Scott and Gillett by their permitting the bill to be taken as confessed. If other evidence is required on this point it is only necessary to recur to the circumstances of the case and the acts of the parties to satisfy the mind beyond all doubt.

2. In this aspect of the case, what would be the orator's rights, had things remained as they were prior to the execution of the bond to Doolittle, as we shall insist that they are not affected by that transaction. The standing of the parties would be this; Gillett would hold the bond and Baxter the legal title in trust for Scott, as the vendor is, from the time of the contract, considered in equity only as trustee for the *purchaser*. The estate is considered as the real property of the vendee, and may be sold, charged, or devised by him. *Campbell* v. *Worthington*, 6 Vt. R. 448. *Seton* v. *Slade*, 7 Vesey, 274. *Brown* v. *Monck*, 10 do. 614. Com. Dig. Chancery, 2, c. 1. *Malin* v. *Malin*, 1 Wend. 658. Baxter then is to be regarded as the vendor and Scott as the purchaser. The latter had an interest in the premises which he might have sold or devised, which this court would have enforced against Baxter. If he had an interest which might be

thus passed by sale or devise, may it not be reached by his creditors ? Would this court hold that property to the amount of $2000, invested in substantial improvements, was beyond their reach ; that he might, by this·shift, place his property out of the reach of the judicial tribunals of the land ? It has even been held that a court of law may reach and appropriate such an interest in real estate in satisfaction of a creditor's debt. *Jackson* v. *Scott*, 18 Johns. R. 94. *Jackson* v. *Parker*, 9 Cowen's R. 73. And it was expressly held, in these cases, that the judgment was a lien on the debtor's interest, even at law, and it is clear that the attachment in the case at bar was a lien on Scott's equitable interest in equity. *Churchill* v. *Grow*, Nelson's Ch. R. 89. 1 Ch. Cas. 35. *Crisp* v. *Heath*, 7 Vin. Abr. 52, e, pl. 2. *Griswold* v. *Marsham*, 2 Ch. Cas. 170. *Sharp* v. *The Earl of Scarborough*, 4 Vesey, 538. Sugden's Vend. 616, Am. ed. of 1836. *Carkhuff* v. *Anderson*, 3 Binney, 4. Under the circumstances of this case, the aid of a court of chancery is necessary to perfect the creditor's title, and it is for this reason the orator comes here. The principle is now well settled that equity will aid a judgment creditor to reach the equitable interest of the debtor, and even *choses in action*, which cannot be taken on execution, when payment of his debt cannot be otherwise obtained. *Bigelow* v. *The Cong. Society of Middletown*, 11 Vt. R. 283. *Waterman* v. *Cochran et al.*, 12 do. 699. *Taylor* v. *Jones*, 2 Atk. 600. *Scott* v. *Scholy*, 8 East, 467. *Boyd & Suydam* v. *Dunlop*, 1 Johns. Ch. R. 478. *Bayard et al.* v. *Hoffman et al.*, 4 do. 450. *Brinkerhoff et al.* v. *Brown et al.*, do. 671. *Mc Dermutt* v. *Strong*, do. 687. *Spader* v. *Davis*, 5 do. 280, 20 Johns. R. 554. *Whittlesey* v. *McMahon*, 10 Conn. R. 137. *Bottsford* v. *Beers et al.*, 11 do. 369. Parker, Ch. J., in *Ayer* v. *Bartlett*, 6 Pick. 76.

Under these circumstances the orator would have been entitled to the interposition of this court, and the question now arises, is that remedy defeated by the sale to Doolittle ? We insist that it is not, for several reasons. 1. Baxter must have known that Scott was the purchaser and owner of the property at the time the sale was made to Doolittle, and he *then* knew that the orator had attached the premises and claimed that they belonged to Scott. The record of the

ORLEANS,
March,
1842.

Woods
*v.*
Scott et al.

attachment was constructive notice to him of the orator's claim. *Rathbone et al.* v. *Riley,* 3 Day's R. 503. *Dodge et al.* v. *Griswold et al.,* 8 N. H. R. 425. *Jackson* v. *Parker,* 9 Cowen, 73. *Jackson* v. *Scott,* 18 Johns. R. 94. If Baxter would place his defence on the ground that, at the time he executed the bond to Doolittle, he had no knowledge of the orator's attachment, or of Scott's interest, he should have positively denied notice and all knowledge of facts from which notice might be presumed. This is a cardinal rule of equity law. Knowledge of the attachment is not denied, and it is proved by Edmunds that he had notice in fact of the attachment when made. He certainly had knowledge of the possession of and improvements made by Scott, which was constructive notice of the latter's interest. *Rublee* v. *Mead,* 2 Vt. R. 544. *Daniels* v. *Davison,* 16 Vesey, 249. *Chesterman* v. *Gardner,* 5 Johns. Ch. R. 33. If, however, it is conceded that he was not in fact informed of Scott's interest, the attachment was sufficient to put him on inquiry; and whatever is sufficient to put a person on inquiry is considered, in equity, as conveying notice. *Peters* v. *Goodrich,* 3 Conn. R. 146. *Sigourney* v. *Mann,* 7 do. 324. *Pitney* v. *Leonard,* 1 Paige's R. 461. 2. The service of the bill and subpœna in this case was sufficient notice to Baxter of all the facts on which we ground ourselves for relief, the service on him having been made prior to the payment of the purchase money by Doolittle and conveyance to Chase. Sugden on Vendors, Am. edition of 1836, p. 313. *Frost* v. *Beekman,* 1 Johns. Ch. R. 288, 301. *Jewett* v. *Palmer,* 7 do. 147.

*Smalley & Adams,* for Baxter.

The plaintiff's bill is attempted to be sustained on three grounds.

I. That Baxter entered into a fraudulent combination with Scott and Gillett to place Scott's property beyond the reach of his creditors.

II. That Baxter held in trust for Scott the legal title to the land upon which the plaintiff's executions were levied at the time of such levy.

III. That Baxter, at the time of filing the orator's bill, had

the funds of Scott in his hands, derived from the sale of the premises to Doolittle.

Neither of which positions can be sustained against Baxter on legal or equitable grounds.

I. No part of the evidence has a tendency to excite a suspicion that Baxter, at the time he executed and delivered the first bond to Leslie, for Gillett, had any knowledge or suspicion that Scott then had, or was thereafter to have, any interest in the premises. There is no proof that Baxter, at this time, had ever seen or heard of Scott, and consequently there is an end to all ground for supposing that Baxter, at the commencement of this business, intended in any way to aid Scott in concealing his property.

II. 1. If Baxter was the trustee of Scott at the time of the plaintiff's attachments, these attachments created no lien upon the property in Baxter's hands which he was bound to notice. Baxter could not, at this time, have been made liable if he had executed a deed to Gillett in pursuance of the bond which he had previously given, though he might have had notice that Scott, as between him and Gillett, had acquired an equitable interest in the premises. The attachments were made in August, 1834. In March, 1835, Gillett sold to Doolittle, and Baxter took up, the bond given to Gillett, and executed a bond directly to Doolittle, which, as respects these parties, has the same effect as if Baxter had then conveyed to Gillett or Doolittle. The plaintiff's executions were levied in May, 1835. The attachments alone could not create such a lien upon the premises as to justify Baxter in refusing to deed to Gillett, according to the provisions of his bond. If Gillett had offered to pay and demanded a deed, Baxter could not have justified a refusal to deed on the ground that Scott, as against Gillett, had acquired an equitable interest in the premises by erecting buildings thereon, and that the same had been attached by Scott's creditors. If the plaintiff, on attaching the premises, and before Gillett had sold to Doolittle, and Baxter had conveyed to him, had filed his bill in this court, and procured an injunction ordering Baxter not to convey and ordering Gillett not to demand a deed from Baxter in pursuance of his bond, the lien, now attempted to be set up, might have been created, and Baxter protected, on the same principle that this court will grant a *ne exeat republica*.

2. Admitting that the plaintiff's attachments created a lien upon the equitable interest of Scott, it then becomes important to inquire whether Baxter, at the time of the attachments, or at any other time thereafter, held the legal estate in the premises attached in trust for Scott.

That no such trust existed is apparent on several grounds.

1. Baxter executed his bond to Gillett without any knowledge of the existence of Scott, and if Baxter held the legal estate in trust he held it for the person to whom he had covenanted to convey.

2. There is no evidence in the case to show that Baxter had any notice, at any time, that Scott either had, or pretended to have, any interest in the buildings by him erected. The most that can be said by the plaintiff on this point is that the manner in which the business was conducted by Scott and Gillett, subsequently to the execution of Baxter's bond, was such as might induce Baxter to suspect that Scott had an interest in the buildings. But this suspicion would not justify Baxter in treating Scott as the owner, or refusing to convey to Gillett according to the conditions of his bond. It would be equally absurd and unjust to charge Baxter as the trustee of Scott, without proof beyond mere circumstances, which might or might not have created a suspicion in the mind of Baxter that Scott had acquired an interest in the premises.

3. Admitting that Baxter had notice that Scott erected the buildings on the premises with his own funds, by the permission of Gillett, this would not give Scott any right to demand a deed from Baxter, or any other right which he could enforce as against Baxter without Gillett's consent. If Scott had no right which he could enforce against Baxter, his creditors have acquired none by their attachment which can be enforced. It would be absurd to say that Scott, by building upon the premises by the consent of Gillett, acquired any right as against Baxter, when it must be admitted that he could not protect Baxter from any suit brought by Gillett against him either to enforce the execution of his contract or recover damages for non-performance.

4. Admitting that Scott and Leslie made use of Gillett's name to conceal Scott's property, this will not in any way affect Baxter, or alter his rights and duties, unless he had

notice when he executed the first bond, and there is no evidence in the case which has a tendency to prove any such notice.

III. There is no pretence in the case that Baxter has now or ever had any of Scott's property in his hands, to indemnify himself against the effect of the plaintiff's attachments.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The orator's bill is confessed by Scott and by Gillett. As to them, it may be considered that Scott was the sole owner of the premises purchased of Baxter, after paying the amount due to Baxter; that Scott erected the buildings and made the improvements with his own means, and that Gillett had no interest therein.

Baxter has put in an answer, which is traversed and testimony has been taken.

From the testimony it appears that Scott was indebted to the orator as early as the year 1827; that some time in January, 1830, Baxter gave his bond to Gillett to deed him the premises, on the payment of fourteen hundred dollars, and an annual rent of one hundred and sixty-eight dollars; that very soon afterwards, Scott moved on to the premises, made improvements, erected a new tavern house and other buildings, and continued to occupy them until March, 1835, when he sold to one Doolittle, and, in the course of this time, *he* contracted a debt with Baxter and his partner, Edmunds, of from ten to fifteen hundred dollars for materials, paying hands, &c.

In August, 1834, the orator caused the land, buildings, &c., to be attached upon two writs, as the property of Scott, in due form of law, on which attachments judgments were rendered, and, on the fifteenth day of May, 1835, executions issuing thereon were levied on forty-nine one-hundredths, of the premises, as the property of Scott, for the sum of about four hundred and thirty-four dollars. In this levy the appraisers estimated the whole premises as worth two thousand nine hundred and thirty-three dollars and thirty-four cents, and the sum due to Baxter as two thousand and fifty dollars.

On the fifth of March, 1835, the premises were sold by Leslie, as the agent of Scott, or Gillett, or both, to Doolittle for three thousand dollars; of which, two thousand

one hundred dollars were due to Baxter, for the original purchase money. Doolittle secured to Baxter and his partner, Edmunds, the remaining nine hundred dollars. It appears that of the nine hundred dollars, five hundred dollars were appropriated to pay the debt due to Baxter & Edmunds, before mentioned, and for four hundred dollars they (B. & E.) gave their note running to Gillett. The balance of Baxter & Edmund's debt against Scott was paid by a conveyance executed by Scott of part of the premises included in the bond first given to Scott. That bond was given up, Baxter conveyed to his partner, Edmunds, one undivided half of the premises conveyed by Scott to them, thus vesting in Baxter & Edmunds the title thereto. Baxter then executed a new bond to Doolittle, conditioned, to convey the premises purchased by him, on the payment of twenty-one hundred dollars and the interest thereon, which was due in March, 1837.

It appears to us, undeniably, that Gillett had no interest in the original purchase by Scott from Baxter, nor is there any evidence proving, or tending to prove, that he ever advanced any thing to Scott towards the buildings, or had any debt whatever against him. He has put in no answer to the bill, either denying the facts set forth therein, or setting up any claim either in law or equity thereto, or any debt due, or claim against Scott. As it respects *him*, therefore, by his suffering the bill to be taken as confessed, these facts must be conceded. No evidence has been introduced to show or establish any such claim of Gillett. Leslie, in his deposition, does not state any such debt, and there is no other evidence, except as to the sayings of Scott and Leslie, which cannot be considered as legal evidence in this cause. If it was important for either of the defendants to establish any legal or equitable claim in Gillett, as against the creditors of Scott, it is sufficient to say that no evidence to that effect has been introduced, but, on the contrary, all the evidence tends to prove that his name alone was used for the benefit of Scott. We consider then that Scott had such an interest in the premises, at the time of the attachment made by the orator, as was subject to be taken by his creditors, either at law or in equity, and that if the attachment had been immediately followed by a bill in equity, enjoining Baxter from conveying

to any other person than Scott, Gillet or the orator, the remedy of the orator would have been unquestionable; that is, the orator would have been permitted to take the place of Gillett or Scott, and, on paying to Baxter the amount due, would have been entitled to a conveyance of so much as would satisfy his debt. We are not prepared to say that the attachment made in August, 1834, should operate as an injunction to Baxter not to comply with the condition of his bond made to Gillett. On the contrary, we are inclined to the opinion that, notwithstanding the attachment, if Gillett had either paid or tendered the amount due on the bond and demanded the conveyance, Baxter would have been justified in deeding to Gillett, according to the terms of the bond originally given to him. But, in that case, the attachment would have held the land, &c., as against both Scott and Gillett, after paying the amount due or paid to Baxter, and the remedy of the orator would have been against them alone. We find that Baxter had actual notice of the attachment, as appears from the testimony of Edmunds. He would not, therefore, be justified in conveying to *any one else*, so as to defeat the orator's claim against Gillett and Scott. We learn, however, that while Gillett held the bond of Baxter, and while Scott was erecting the buildings, Scott contracted a debt with Baxter & Edmunds to a large amount, for the very purpose of making the improvements and erecting the buildings, and that Leslie, who held the bond, agreed that it should not be given up, until that debt was paid, and this took place previously to the service of the attachment for the orator's debt. It was, therefore, both legal and equitable, that so much of the purchase money, on the sale to Doolittle, as was necessary to pay the balance of that debt, should be applied for that purpose, and, for the residue, the amount for which the note of Baxter & Edmunds was given to Gillett, we think the orator has a claim, and that it should be paid to him. This, we learn, is four hundred dollars, and though the testimony does not fix the sum with accuracy, yet we think that should be taken as the sum for which the defendant, Baxter, and his partner, Edmunds, gave their notes to Gillett, as they have introduced no testimony to fix the sum more accurately and precisely.

We have had some doubts whether Edmunds should not

have been a party to this bill, as Baxter & Edmunds gave the note to Gillett. This, however, was not insisted on in the hearing before the chancellor and has not been urged before us. Indeed, we could not, in this court, refuse a decree on that ground, as it could have been obviated, if insisted on at the hearing before the chancellor. There is no proof nor pretence that the note given to Gillett has been paid. Moreover, we think that, after Baxter had actual notice of the orator's attachment, he would only have been justified in deeding to Gillett and receiving the debt due to Baxter & Edmunds, but not in paying anything either to him or Scott, or creating any further incumbrance on the equitable claim of the orator to the lands and buildings, for the payment of the debt.

We have further had some doubts, whether this bill was so framed as to entitle the orator to the decree we are about to make. These have, however, yielded, on further examination. The end and scope of the orator's bill is to obtain a satisfaction of his debt, out of the interest which Scott had in the premises, at the time of the attachment. He had levied his attachment and execution on what appeared to him to be that interest, and which he was justified in considering as the interest of Scott, from the facts which he has proved to have been then in existence. From the evidence, however, it appears that, in equity, Baxter & Edmunds had a further claim which should be considered as a charge on the estate, and although the orator may not, on that account, be entitled to the specified relief prayed for, or a deed of the premises levied on, yet, under his prayer, that the defendant pay him the amount thereof, and his general prayer, he is entitled to have a decree for the payment of the amount of the note which was given to Gillett; as Baxter should not have conveyed to any one but Gillett, after notice of the attachment, and thereby either embarrass the orator in the collection of his debt or turn him over to other parties to obtain what was equitably due to Scott, the legal right to which was in the name of Gillett.

As a result of the whole, we are of opinion that Scott made the purchase of Baxter for which the first bond was given that he was at the whole expense of building; that he occupied the tavern for his own benefit, and was, in short,

the sole and absolute owner thereof after paying the bond to Baxter ; that Gillett had no interest whatever, in the premises ; has neither advanced any thing, nor set up any claim thereto, and no such claim is established or proved, by any testimony ; that, on the sale to Doolittle, whatever interest in the premises existed, over and above paying the bond to Baxter; and the account of Baxter & Edmunds, which was agreed should be paid by Leslie, who held the bond, did in equity belong to Scott, and the orator is entitled thereto, and that there is no evidence whatever, that any payment had been made of the note given to Gillett before the filing of the bill.

On the principle that equity will aid a judgment creditor to reach the equitable interest of his debtor, when payment of his debt cannot be obtained at law, we think a decree should be made for the orator for the amount of the note given by Baxter & Edmunds to Gillett, out of the purchase money on the sale to Doolittle, which is four hundred dollars, with the interest from March, 1835, and the cause will be transmitted to the chancellor to make a decree accordingly.  No costs will be decreed, against Baxter, in this case, as there is no evidence to implicate him in any fraud or any attempt to conceal the property of Scott, and he may have thought he was fully justified in executing this note to Gillett, and would not be justified in paying the same to the orator without a decree of this court. Scott and Gillett will be decreed to pay cost.