RICHARD CUNNINGHAM & another *vs.* CHARLES S. BUTLER & others.

Suffolk.    March 24. — May 11, 1886.    W. ALLEN & HOLMES, JJ., absent.

> If A., a citizen of this Commonwealth, with knowledge that his debtor residing here has stopped payment, and anticipating that proceedings in insolvency will be begun against the debtor, makes an assignment of his claim to a citizen of another State, without consideration, and the latter, before proceedings in insolvency are begun against the debtor, brings an action upon the claim in said State, and attaches property of the debtor there, this court will, on a bill in equity, by the assignee in insolvency of the debtor, restrain A. from prosecuting the action to judgment, if A. has control of such action.

BILL IN EQUITY, filed June 19, 1885, by the assignees in insolvency of the estate of Daniel C. Bird, to restrain the prosecution of two actions at law against him.    The case was heard by *Gardner*, J., and reserved for the consideration of the full court; such decree to be entered as justice might require.    The facts appear in the opinion.

*E. M. Johnson & M. R. Thomas*, for the plaintiffs.

*H. R. Bailey*, for the defendants.

DEVENS, J.    The case, as disclosed by the facts agreed and by the additional evidence submitted, is in substance as follows. Daniel C. Bird, a citizen and resident of Massachusetts, was in embarrassed circumstances, and indebted to the defendants, also citizens and residents of Massachusetts.    After the suspension of payment by Bird, the defendants were informed by him, on the night of March 4 and 5, 1885, that a balance was due him from Aaron Claflin and Company of New York.    On March 6, the defendants executed an assignment to one Fayerweather, a resident of New York, of their claims against Bird, which assignment was made without consideration and without previous communication.    On March 11 and 25, 1885, two actions were commenced in New York in the name of Fayerweather on these claims against Bird as defendant, Claflin and Company being summoned as garnishees.    Between March 13 and May 20, there were various meetings of Bird's creditors; and a proposition on his part for a composition under the St. of 1884, *c.* 236, was filed by Bird, the notice upon which was returnable on May 4.    On

May 20, 1885, this proposal was withdrawn, regular proceedings in insolvency were continued therein, and on June 1, 1885, the plaintiffs were duly appointed assignees of Bird in insolvency. No judgment has, so far as appears, been obtained in New York on the claims sued by Fayerweather.

Without stating in detail the evidence, it is fairly proved that the defendants, with full knowledge that Bird was insolvent, anticipating that there might be proceedings in insolvency in this State, and intending to secure to themselves, to the exclusion of other creditors, the avails of the debt owing to Bird by Claflin and Company, made the transfer of their claims to Fayerweather; and that the suits in New York now carried on in his name are subject to their control and conducted for their benefit. The attachments made in New York by process of garnishment are to be treated, so far as the defendants are concerned, as made by them.

In *Dehon* v. *Foster*, 4 Allen, 545, it was held that this court had jurisdiction in equity, upon a proper case made, to enjoin a citizen of this Commonwealth from availing himself of an attachment of personal property in another State, in an action against a debtor who was insolvent under the laws of this Commonwealth, and thus preventing the same from coming to the hands of the assignee; and that it was no objection that the action was commenced before the institution of proceedings in insolvency, if this was done with a knowledge that such proceedings were about to be instituted, and with a view to obtain a preference. In the same case, 7 Allen, 57, it was held that the equitable right of the assignees was paramount, unless some valid claim or lien existed on the funds, which, under the laws of the foreign State, would divert them from the assignees if the defendants were compelled to abandon the attachment of them in the courts of that State.

If it be held that the facts in the case at bar are as we find them to be, the argument of the defendants is principally directed to showing that the case of *Dehon* v. *Foster* was erroneously decided; and that it should now be reconsidered and overruled. They contend that the provision of the Constitution of the United States, Art. 4, § 1, which enacts that " full faith and credit shall be given in each State to the public acts,

records, and judicial proceedings of every other State," was not therein sufficiently considered; and that, as the attachment proceedings in New York in the case at bar are judicial proceedings by a court of competent jurisdiction, the plaintiffs are not entitled to relief, as the courts in that State are entitled to decide to whom the property found therein belongs. They especially rely upon the cases of *Green* v. *Van Buskirk*, 5 Wall. 307, and 7 Wall. 139, *Warner* v. *Jaffray*, 96 N. Y. 248, and *Lawrence* v. *Batcheller*, 131 Mass. 504, all of which have been decided since *Dehon* v. *Foster*.

The case of *Green* v. *Van Buskirk* may be briefly stated as follows. A., B., and C. were residents and citizens of New York. A., being indebted to both B. and C., mortgaged certain personal chattels then in Illinois to B. Before the mortgage could be recorded in Illinois, or the property delivered there, one of which acts is essential by the laws of Illinois to the validity of the mortgage, as against third parties, although not by the laws of New York, C. took an attachment out from one of the courts of Illinois, a proceeding *in rem*, and, under the laws of that State, in due form levied on and sold the property. B. did not make himself a party to this suit in attachment, although he had notice of it, and, by the law of Illinois, a right to make defence to it; but, after its termination, brought suit in New York against C. for taking and converting the chattels. C. pleaded in bar the proceedings in attachment and the judgment obtained in Illinois. It was held in the Supreme Court of the United States, reversing the decision of the Supreme Court of New York, that, in order that the "full faith and credit" required by the Constitution should be given to the judicial proceedings in the State of Illinois, the judgment of the court there, that the personal property there situate was subject to this process of attachment, and that the proceeding in attachment took precedence of the prior unrecorded mortgage from A., was binding elsewhere; that, as the effect of the attachment, judgment, levy, and sale was to protect C., if sued in Illinois for the property thus acquired, it would protect him when sued in the court of another State for the same transaction, if he justified in the same manner; that the fiction of law, that the domicil of the owner draws to it his personal estate, yields whenever, for the purposes of justice, the

actual situs of property should be examined into; that a title acquired under the attachment laws of a State, and held valid there, would be held valid in another State, even if all parties interested in the controversy were citizens of such other State; and that thus, as an attachment of personal property in Illinois would take precedence of an unrecorded mortgage executed in another State where record was not necessary, it would do so though the owner of the chattels, the attaching creditor, and the mortgage creditor were all residents of such other State.

But the case of *Dehon* v. *Foster* recognizes the law to be as held by the Supreme Court of the United States in *Green* v. *Van Buskirk*. "The case," says Chief Justice Bigelow, "proceeds on the ground that the defendants, if allowed to proceed with their action, will perfect the lien which is now inchoate under their attachment, and will thereby establish a valid title to the property of the insolvent debtors under the laws of Pennsylvania." Holding this to be the law, it was decided that the act of the defendants, in causing the property of the insolvent debtors to be attached in a foreign jurisdiction, tends directly to defeat the operation of the insolvent law in its most essential features, to prevent a portion of the property of the debtors from coming to the assignees to be equally distributed among their creditors, and to obtain a preference for themselves; that the defendants, being citizens of this State, were bound by its laws, and could not be permitted to do any acts to evade or counteract their operation, the effect of which would be to deprive other citizens of rights which those laws were intended to secure.

The case of *Lawrence* v. *Batcheller*, *ubi supra*, clearly recognizes the ground above stated as that upon which *Dehon* v. *Foster* proceeds, and in no way controverts it. That was a case in which the attaching creditor, who was a resident in this State, had proceeded to judgment in a foreign State after proceedings in insolvency here, and had actually collected the amount, by virtue of his attachment, from funds in the hands of a trustee of the debtor. He was sued in this State for the amount he had thus collected by the assignee in insolvency. It was said, referring to the case of *Dehon* v. *Foster*: "Because it was beyond the power of the court to call in question the validity of this lien acquired under the laws of another State, it proceeded to enjoin

the defendants over whom the court had jurisdiction from enforcing in another State their legal rights." It was further held, that, the defendant having been permitted without interference to proceed to judgment, an action at law for the value of the property obtained would not lie against him by the assignee, as there were many rights in equity which courts of law did not recognize at all, for which reason defendants in equity were often enjoined from prosecuting actions at law.

The case of *Warner* v. *Jaffray, ubi supra,* was as follows. A general assignment for the benefit of creditors had been made under the general assignment act of New York (Laws of 1877) on March 1, 1881. It was not recorded in Pennsylvania until March 18, where it could only become operative by record so as to affect any *bona fide* purchaser, creditor, &c. Previously to the 18th, the defendant had brought suit in Pennsylvania, and attached property there. He was himself a citizen of New York, as were the debtor and his assignee. It was held, in a proceeding brought against the creditor in New York, that the lien he had acquired in Pennsylvania was saved from the operation of the assignment; that he had the same right to enforce payment of his claim out of the debtor's property that a resident creditor in Pennsylvania had; and that he would not, by any order, be restrained from pursuing it. But in *Warner* v. *Jaffray* the assignment was of an entirely different nature from that made in proceedings in insolvency, such as is found in the case at bar. The property of the debtor was not taken for distribution by the law, but by his own voluntary act. The assignment did not operate on the claims of the creditors, or place them under any obligations to join in it. They were entirely free to act, could refuse to have anything to do with it, could retain their claims, and enforce them afterwards against the debtor, or immediately against any property not covered by the assignment. The assignee was a trustee only to the extent that the creditors chose to accept him as such. As he violated no rights of other creditors in pursuing any property not covered by the assignment, and was bound in no way thereby, he could not properly have been restrained from seeking his remedy wherever there was attachable property which the assignment did not reach.

The cases relied on by the defendants cannot therefore be deemed to diminish the authority of *Dehon* v. *Foster*. Nor can we see that there is injustice in holding that, in a State which has enacted a system for an equal distribution of the assets of an insolvent among his creditors, residents of that State, who are bound by the decree establishing the insolvency, should be restrained from seeking in other States assets which otherwise might reasonably be expected to come to his assignee.

While the claims of the residents of another State to property there situate might not be set aside or compelled to yield in such State to those of such assignee, yet it could properly be held that, where the pursuing creditors were not citizens of the State whose process was invoked, the courts thereof would not sustain their claim in preference to that of an assignee obtaining title under the laws of another State, certainly not if such title was previously acquired. *Burlock* v. *Taylor*, 16 Pick. 335. *Bentley* v. *Whittemore*, 4 C. E. Green, 462. *Sanderson* v. *Bradford*, 10 N. H. 260.

It has been decided in Pennsylvania, that, while the claims of a receiver of a corporation, appointed by the courts of another State, to property there situate, could not be recognized when they came in conflict with those of residents of Pennsylvania, yet that, where a receiver of a corporation had been appointed by a court of competent jurisdiction in another State, a creditor who resides in that State, and is bound by the decree of the court appointing this receiver, cannot, in an attachment execution, recover assets of the corporation which the receiver claims. *Bagby* v. *Atlantic, Mississippi, & Ohio Railroad*, 86 Penn. St. 291.

In the case at bar, it is true that the defendants had made their attachment through Fayerweather in New York before there had been an assignment in insolvency in this State actually executed, but this was done with full knowledge on their part that the debtor Bird was embarrassed and had suspended payment, and necessarily with intent to avoid the effect of the assignment so far as the property attached was concerned. As residents of this State, they cannot be allowed to this extent to defeat the operation of the assignment, and thus to obtain a preference over other creditors resident here. They are within the limits of the

jurisdiction of this court, and amenable to its process, and should be enjoined from prosecuting a suit, the effect of which, if successful, will be to work a wrong and injury to other residents of the State.                    *Injunction accordingly.*