L. D. HAZEN and L. K. QUIMBY, assignees *vs.* LYNDONVILLE
NATIONAL BANK, et al.

May Term, 1898.

Present: ROSS, C. J., TAFT, ROWELL, TYLER, MUNSON, START and THOMP-
SON, JJ.

*V. S. 2096, 2098, 2125—Effect of Deed of Assignment by Court of Insol-
vency—Assets without the State—Equity Jurisdiction—Injunction—
Modified Relief—Assignee's Duty—Presumption—Estoppel—Participa-
tion in Breach of Trust.*

The deed of assignment by the judge of a court of insolvency conveys to
the assignee the title to all the attachable property of the debtor,
within and without the State, as against the debtor and all his creditors
who are citizens and residents of the State.

A citizen of this State will not be permitted to attach and sell in another
state property of his debtor, also a citizen of this State, against whom
proceedings in insolvency are here pending.

If the citizen making such attempt be a national bank and, so, protected by
the United States statute against a preliminary injunction, the court will
not for that reason refuse such relief as may be available upon final
decree.

If after a bill has been brought seeking a final injunction against such pro-
ceedings, the defendant, who has already attached the property, sells his
cause of action to another, who becomes substituted as plaintiff and
proceeds to judgment, execution and sale, the bill may be amended
accordingly and a decree rendered against the defendant for the proceeds
of the execution sale.

When a court of equity has jurisdiction of a bill for an injunction against
the commission or continuance of a wrongful act, and the defendant,
after service of process upon him, has rendered relief by injunction
ineffectual, it may award damages in substitution for the injunction.

An intelligent person is presumed to have intended the natural and legal
consequences of his act.

An estoppel by judgment must be mutual.

The dismissal of a bill in equity without prejudice is equivalent to a non-
suit in an action at law.

It is the duty of an assignee in insolvency to apply to the court for leave to
bid in, for the benefit of the estate, property of the insolvent which is
about to be sold at a great sacrifice in judicial proceedings in another
state, and it is a breach of his trust to bid it off, at a fraction of its value,

as agent of a creditor of the insolvent, and such creditor, having participated in the breach of trust, cannot retain the property except to the extent of the price paid.

CHANCERY. For hearing on pleadings, master's report and defendant's exceptions thereto, at the December Term, 1897, Caledonia County, before *Thompson*, Chancellor. *Proforma* decree that the defendant's exceptions be overruled and the orators recover of the defendant bank $5576.49, and interest from December 28, 1894, with costs, and that as to the other defendants the bill be dismissed. Both parties appealed.

*Henry C. Ide* and *Harry Blodgett* for the orators.

*Smith & Sloane* for the defendants. .

The attachment in New Mexico was made before the deed of assignment to the orators was executed here. This was not a voluntary assignment by the debtor, but an involuntary proceeding under the Statutes of Vermont and having such effect only as those statutes gave. They could have no extra-territorial effect and if recognized at all in another jurisdiction, it would be as a matter of comity. *Rhawn* v. *Pearce*, 51 Am. Rep. 691; *Paine* v. *Lester*, 44 Conn. 196; *Sheldon* v. *Blauvelt*, 29 So. Car. 453; 8 Am. and Eng. Enc. 284; *Faulkner* v. *Hyman*, 142 Mass. 53. The orators, therefore, never acquired title to the stock, and cannot recover it or its avails. *Goss* v. *Cardell*, 53 Vt. 447.

Because the laws of Vermont say that the assignment shall relate back to the filing of the petition, it does not follow that property in another jurisdiction vests in the assignee before a conveyance and possession taken under it. Such laws may operate upon property here, but not outside the state. *Warner* v. *Jaffray*, 96 N. Y. 248; *McClure* v. *Campbell*, 71 Wis. 350; *Rhawn* v. *Pearce, supra*.

But it is claimed that this property would have vested in the assignees but for the action of the defendants, who were subject to the laws of Vermont. If so, the orators might

have interposed in the proceedings in New Mexico before judgment. When they did interpose the court there held that the creditor had the better right.

This case differs from *Crampton* v. *Marble Co.*, 60 Vt. 291, for there no other court had intervened, as the opinion is careful to remark. The defendants cannot be compelled to pay over the avails of the sale of their notes to McMillan, for they had a perfect right to sell them. A law which forbade such action would be an infringement upon the liberty of the citizen, guaranteed by the constitution of the United States. To recover the stock or its avails the orators must attack the judgment in New Mexico which is entitled to the same "faith and credit," that is, the same effect, here as there. The orators did intervene in New Mexico and brought a bill, alleging what they allege here, and the bill was dismissed. That shows what effect the court there gave to its proceedings, and the same effect should be given here. Dicey, Confl. Laws, 338; Van Fleet, Coll. Attack, 29. We submit that the proposition that a person can be held accountable in one jurisdiction for what he lawfully acquires in another is not sound. *Thompson* v. *Tetley*, N. H., June Term, 1896; *Green* v. *Van Buskirk*, 5 Wall. 307: *Lawrence* v. *Batcheller*, 131 Mass. 504. *Cole* v. *Cunningham*, 133 U. S. 107 was held not to conflict with *Green* v. *Van Buskirk*.

*Proctor* v. *Bank*, 152 Mass. 223, is decisive in principle and reason, and was approved in *Batcheller* v. *Bank*, 157 Mass. 33.

The only ground upon which a bill in equity could be maintained would be to *prevent* the foreign judgment. *Platt* v. *Ins. Co.*, 62 Vt. 166. In this case the right to an injunction did not exist, by reason of the United States statute. To say that the orators have the same right by final decree which they would have had had the right to a preliminary injunction existed, is to make the statute nugatory. What is the use of an injunction if the orator stands just as well without?

But if the court should take jurisdiction it certainly should not compel the defendants to pay the value of the stock which the Merchants National Bank, the real party in interest, now holds in this jurisdiction under a purchase at one-third of its value. And would it be equitable to compel the defendant bank to pay over what it received for its notes and thus deprive it of all right to dividends in the estate?

Some English cases hold that an assignment by virtue of bankruptcy proceedings passes the title to property wherever situated, but that is not the law of the United States. *Booth* v. *Clark*, 17 How. 322: 15 L. C. P. ed. 164; *Sturtevant* v. *Armsby Co.*, 66 N. H. 557; Story, Confl. Laws, 8th ed. 565, 575.

The defendant sold nothing but its notes. The avails of the stock belong to McMillan, as the court in New Mexico held. *Holmes* v. *Remsen*, 20 Johns. 229; *Barth* v. *Backus*, 140 N. Y. 230; *Sherman* v. *Estey Organ Co.*, 69 Vt. 355.

THOMPSON, J. October 28, 1893, H. E. Folsom was an insolvent debtor, and had been for some time prior thereto. His insolvency was then known to the defendants. On the date named, a creditor's petition, praying to have Folsom adjudged an insolvent debtor, was filed in the court of insolvency for the district of Caledonia, and such proceedings were had thereon that he was regularly adjudged an insolvent debtor by that court, November 14, 1893. November 24, 1893, the orators were duly elected assignees of his estate, and accepted the trust, gave bonds for the faithful performance of the duties thereof, and were appointed as such assignees, and November 27, 1893, said court of insolvency, assigned and conveyed to them all the estate, real and personal, of said debtor, except such as was by law exempt from attachment, together with all of his deeds, books and papers relating thereto.

At the time of the filing of the petition in insolvency, Folsom was the owner of one share of stock in the Cimmaron Cattle Company of New Mexico, and November 25,

1893, he executed and delivered an assignment thereof to the orators. In December, 1893, the Cimmaron Cattle Company was notified of the assignment of this stock to the orators, and entered a memorandum thereof on its books. From the time of such notice to the company, the stock was not subject to attachment under the laws of New Mexico, by the creditors of Folsom.

October 28, 1893, the defendant, the Lyndonville National Bank, held a note for $1000 against H. E. Folsom, and another note for $4000, indorsed by him but signed by his brother, S. M. Folsom, of New Mexico, and October 31, 1893, it instituted in the district court for the county of Bernalillo in that territory, a suit in its favor against H. E. Folsom on the note for $1000, and a suit against him and S. M. Folsom on the note for $4000, and November 1, 1893, attached the stock in question in these suits, which were duly entered in said district court.

The original bill in the case at bar was served on the defendants, May 5, 1894, and the amended bill was filed February 25, 1895. This suit was brought after attempts by the orators at negotiation with the Lyndonville National Bank in respect to the attachment of the stock in New Mexico, had failed.

The bank made service by publication as required by law, for four weeks in New Mexico, against H. E. Folsom as an absent defendant, the first publication in the $4000 suit being on May 12, 1894, and the first publication in the $1000 suit being on May 15, 1894, in New Mexico papers. In June, 1894, it sold the two notes in question to A. B. McMillan, its attorney in the two suits, taking in payment therefor, his note payable to itself at the Lyndonville National Bank, in six months from date, without interest, for $5000. The date of this note was a few days prior to June 25, 1894. The sale of the notes to McMillan was an actual and unconditional sale, the bank taking its chances of collecting the notes of McMillan whether he should collect

upon the suits by sale of the stock attached or not, and he taking his chances on his side of the trade of collecting the pay on the notes from a sale of the attached stock. At that time, not above $3000 could have been collected by legal proceedings from McMillan, who resided in New Mexico. After June, 1894, the Lyndonville National Bank was not the owner and holder of the two notes sued upon, but McMillan was the owner and the holder thereof.

October 2, 1894, the Lyndonville National Bank filed in each of the suits brought by it, its proof of publication of notice, and on the same day defaults were entered in each of the suits, against H. E. Folsom. October 9, 1894, McMillan filed in each of said suits, a motion verified by his affidavit, asking to be substituted as plaintiff therein for the reason that after the commencement thereof and the publication of notice to the absent defendant, H. E. Folsom, the Lyndonville National Bank, for a valuable consideration, had sold and transferred the notes sued upon to him, and that he was then the owner and the holder thereof; and on said motion, said district court ordered that McMillan be substituted as plaintiff in each of the suits in place of the bank, and thereupon final judgment was entered in his favor as such substituted plaintiff in each of the suits, for the full amount of the notes sued upon, together with interest to date of judgment and costs. McMillan took out executions on said judgments and levied the same on the stock attached, and it was sold on execution, December 28, 1894, to satisfy said executions and costs thereon, for $5576.49.

Under the laws of New Mexico, McMillan had the right to be substituted as plaintiff as he was, and to proceed with the suits and obtain the same benefit from the attachment as though the same had been prosecuted in the name of the Lyndonville National Bank. The sale of the stock on the executions absolutely vested all title thereto in the purchaser under the laws of New Mexico.

At the time of the sale of the stock on execution, the

orator, L. D. Hazen, was the president of the Merchants National Bank, a creditor of H. E. Folsom, and he, by the direction of that bank, caused the stock to be bid off at the execution sale, for it, at the price named. At the time it was sold, the stock with unpaid dividends was worth $20,000.

McMillan paid his note, or the renewal thereof, to the Lyndonville National Bank from the avails of the sale of the stock, January 11, 1895.

The debts now proved against H. E. Folsom's insolvent estate, amount to $25,500. His assets which have come to the hands of the orators amount to about $8000, beside any interest which they may have in the stock in question.

At the time of the bringing of this suit, the individual defendants were the officers of the defendant, the Lyndonville National Bank and were such officers to and including the time of the sale of the notes to McMillan and during all that time they and the orators were and now are resident citizens of Vermont. The Lyndonville National Bank is a national bank, located and doing business at Lyndonville in this State, and, for the purposes of this suit, is to be considered a citizen of Vermont. 25 U. S. St. at L. 433; *Petri* v. *Bank*, 142 U. S. 644.

The master further finds that in making the attachment of the stock, and in the sale of the notes to McMillan, the defendants had the intent which is to be legally presumed from their acts.

The individual defendants admit in their answer that they directed the suit to be brought in which the stock was attached. Neither of the defendants took any steps to discontinue any of the suits in New Mexico.

The master finds that at the time the suits were brought in New Mexico, the Lyndonville National Bank knew that insolvency proceedings against H. E. Folsom were imminent, and that this fact was known to its cashier, the defendant, L. B. Harris, when he went to New Mexico and instituted

the suits for it under instructions from the defendants to do so if he thought best. It is clear from the master's report that all the defendants must have then known of Folsom's financial condition at that time. The finding of the master in respect to the intent of the defendants, must be construed to be a finding that they attached the stock to prevent its coming into the hands of the orators as assignees and to obtain an advantage over the other creditors of H. E. Folsom, and that they sold the notes to McMillan for a like purpose, and to defeat the purpose for which this suit of the orators was brought. When an intelligent person does an act, the law presumes that in so doing, he intends that the natural and legal consequences of his act, shall result. Law. Presump. Ev. 262; *Holmes* v. *Holmes*, 37 Conn. 278: 9 Am. Rep. 324; *Keyser* v. *Rice*, 47 Md. 203: 28 Am. Rep. 448; *Larkin* v. *Hapgood*, 56 Vt. 597.

The suit in equity brought in New Mexico by the Merchants National Bank against McMillan and the sheriff, to enjoin the sale of the stock on the executions, to which it is claimed that the orators became parties as intervening petitioners, does not in any way affect the rights of the parties to this litigation, for the reason that the defendants were not parties to that suit, and for the further reason that it was dismissed without prejudice, after the orators and so-called intervening petitioners in that suit had filed a notice, that it would not be further prosecuted and that it might be dismissed without prejudice to any of their rights, respectively, in the premises. Standing thus, the suit was in effect dismissed for want of prosecution, which in an equity suit is no more than a non-suit. *Porter* v. *Vaughn*, 26 Vt. 624. A decree in equity dismissing the bill, without prejudice, only puts an end to the suit then pending and is not a bar to a subsequent suit for the same cause of action. Story Eq. Pl. (8th ed.) § 793; Mit & Tyl. Pl. & Pr. in Eq., 330: *Seymor* v. *Nosworthy*, 1 Cas. in Chan. 155; note to *Lea* v. *Lea*, 96 Am. Dec. 778; *County of Mobile* v. *Kimball*, 102 U.

S. 705; *House* v. *Mullen*, 22 Wallace 42; *Durant* v. *The Essex Co ,* 7 Wallace 107; *Foote* v. *Gibbs,* 1 Gray 412; Cooper's Eq. Pl. 270; 1 Smith's Chan. Pr. (2nd Am. ed.) 222. It has the effect only of a non-suit in an action at law.

Upon the facts stated, this court is called upon to determine whether the orators were entitled to the relief prayed for in their original bill, when process in this suit was served on the defendants, and, if so, whether that right has been defeated by the acts of the defendants and the suits in New Mexico in favor of the Lyndonville National Bank, and if not thereby defeated, to what relief the orators are entitled by reason of the course pursued by the defendants since the commencement of this suit. The prayer of the orators' original bill was that the defendants might be ordered to discontinue their New Mexico suits, and dissolve their attachment of the stock and to release all claim thereto by reason thereof, and that they might be enjoined from further proceeding with said suits and attachment and from enforcing any judgments rendered in those suits against the stock, and for general relief.

The authority of the court of chancery to restrain persons within its jurisdiction from prosecuting suits either in the courts of this State or of other states or foreign countries, is clear and indisputable. The rule of law on this subject is clearly stated in *Dehon* v. *Foster,* 4 Allen 550, by Bigelow, C. J., and is this: "In the exercise of this power, courts of equity proceed, not upon any claim of right to interfere with or control the course of proceedings in other tribunals, or to prevent them from adjudicating on the rights of parties when drawn in controversy and duly presented for their determination. But the jurisdiction is founded on the clear authority vested in courts of equity over persons within the limits of their jurisdiction and amenable to process, to restrain them from doing acts which will work wrong and injury to others and are therefore contrary to equity and good conscience. As the decree of the court in

such cases is pointed solely at the party, and does not extend to the tribunal where the suit or proceeding is pending, it is wholly immaterial that the party is prosecuting his action in the courts of a foreign state or country. If the case stated in the bill is such as to render it the duty of the court to restrain a party from instituting or carrying on proceedings in a court of this state, it is bound in like manner to enjoin him from prosecuting a suit in a foreign court. * * * All that is necessary to sustain jurisdiction in such cases is that the plaintiff should show a clear equity, and that the defendant should be subject to the authority and within the reach of the process of the court." *Bank* v. *Railroad Co.*, 28 Vt. 470; *Vt. & Can. Railroad Co.* v. *Vt. Cent. Railroad Co.*, 46 Vt. 792; *Cole* v. *Cunningham*, 133 U. S. 107; 3 Lead Cas. Eq. (3rd Am. ed.) 272, 201; 3 Pom. Eq. Juris. § 1318; 2 Story's Eq. Jur. § 899; *Keyser* v. *Rice,* 47 Md. 203; 28 Am. Rep. 448; *Cunningham* v. *Butler*, 142 Mass. 47; 2 N. E. Rep. 338; 1 High on Inj. (2nd ed.) § 106.

As the defendants in the case at bar are citizens and residents of this State, the court of chancery has jurisdiction over them in the premises.

The purpose of the insolvency laws of this State is to take and distribute all the property of the debtor, except that exempt by law from attachment, equally among his creditors. To this end it avoids all preferences, and dissolves all attachments, in favor of particular creditors, made within a specified time before the adjudication of insolvency, so that all the property of the debtor, except that which is exempt from attachment, may come into the hands of the assignees. It extends to all his property and assets, wherever situated. That it was intended to embrace property in other states and countries is shown by the provisions of R. L. 1843, now reproduced in V. S. 2125, which reads as follows: "The debtor shall, at the expense of the estate, make and execute such deeds and writings, and indorse such bills, notes, and such other negotiable

papers, draw such checks and orders for moneys deposited in banks or elsewhere, and do such other lawful acts and things as the assignee at any time reasonably requires, and which may be necessary to confirm the assignments, and enable the assignee to demand, recover and receive the estate and effects so assigned, *especially any part thereof which is without the state.*"

The judge of the court of insolvency is required, by an instrument under his hand and official seal, to assign and convey to the assignee the estate, real and personal, of the debtor, except such as is by law exempt from attachment, with his deeds, books and papers relating thereto, and such assignment vests in the assignee all the property of the debtor, real and personal, which he could have lawfully sold, assigned, or conveyed, or which might have been taken on execution upon a judgment against him, at the time of the filing of the petition in insolvency.   R. L. 1818; V. S. 2096; R. L. 1820; V. S. 2098.   The assignment, by operation of law, related back to the date of the filing the petition.

It is self-evident that the attachment of this stock by the defendants in New Mexico would defeat the operation of this law in its most essential features by preventing a portion of H. E. Folsom's property from coming to the orators, as his assignees, to be equally distributed among his creditors.   It would give the defendants a preference by which they would obtain payment of their debts in full to the detriment of the other creditors of the debtor.   It is to be borne in mind that this is not a controversy between the orators and creditors of the debtor who are citizens of New Mexico, or some other state, and no question as to the rights of such creditors is involved.   The assignment of the debtor's estate to the orators, by the judge of the court of insolvency, conveyed title to the stock to them as against the debtor and all his creditors who were citizens of this State and resident therein.   The attachment of the stock by the defendants was an attempt by them to defeat the

operation of its laws, to the injury of the other creditors of the insolvent.  This was manifestly contrary to equity and good conscience.  The defendants were bound by the laws of this State.  And clearly, on the facts charged in the bill and found by the master, the orators in equity were entitled, at the time their original bill was served on the defendants, to an injunction against them, enjoining them from prosecuting their attachment against the stock by their suits in New Mexico and from taking any benefit therefrom as against the orators.  *Cole* v. *Cunningham*, 133 U. S. 107 and cases there cited in the opinion of the court.  *Moran* v. *Sturges*, 154 U. S. 272; *Cunningham* v. *Butler*, 142 Mass. 47; *Bank* v. *R. R. Co.*, 28 Vt. 470; *Vt. & Can. Railroad Co.* v. *Vt. Cent. R. R. Co.*, 46 Vt. 792; *Keyser* v. *Rice*, 47 Md. 203: 28 Am. Rep. 448; *Dehon* v. *Foster*, 4 Allen 550; *Kendall* v. *McClure Coke Co.*, 182 Pa. St. 1: 37 Atl. Rep. 823; *Hayden* v. *Yale*, 45 La. Ann. 362: 40 Am. St. 232; *Allen* v. *Buchanan*, 97 Ala. 399: 38 Am. St. 187; note to *Newton* v. *Bronson*, 67 Am. Dec. 95.  Other authorities might be cited, were it necessary, but this holding is in accord with the great weight of authority.  It is also in accord with the holding of this court in *Crampton* v. *Valido Marble Co.*, 60 Vt. 291.

In the original bill of the orators there was no prayer for a preliminary injunction and none was granted.  A preliminary injunction if asked for, could not have been granted because the defendant really sought to be enjoined was a National Bank.  U. S. R. S. 5242, in relation to National Banks, provides that no injunction shall be issued against such a bank, before final judgment in any suit, action, or proceeding in any state, county or municipal court.  *Bank* v. *Mixter*, 124 U. S. 721.

Before selling the notes to McMillan, the defendants did not discontinue the suits in New Mexico, thus releasing the attachment of the stock.  With the right of McMillan to be substituted as plaintiff in those suits under the law of New Mexico, the defendants in effect sold to him the suits with

the attachment of the stock, as well as the notes. They did this with the intent and for the purpose of obtaining a preference over the other creditors of the insolvent debtor and to prevent the stock from coming into the hands of the orators as a part of the assets of his estate, and to defeat the effect of a final judgment in this suit in favor of the orators, granting them the perpetual injunction in the premises to which they were entitled. The defendants now contend that the sale of the notes to McMillan, and the sale of the stock on execution in the New Mexico suits, constitute an effectual bar to any recovery or decree against them in this action, and in support of this contention they invoke the provision of Art. 4, § 1, of the Constitution of the United States, which requires full faith and credit to be given in each state to the judicial proceedings of every other state. The reply to this claim is, that no question is made as to the conclusiveness of the judgments of the court in New Mexico, nor is it sought in this proceeding to attack them directly or collaterally. This bill is brought to compel the defendants, citizens of this State, to respect and obey its laws and the power of its courts to protect the rights of its citizens.

Under the laws of this State, the rights of the parties to this litigation, whatever they were, were fixed when it was begun and process served therein on the defendants. After such service, it was not in the power of the defendants to divest the orators of their rights without their consent, or the action of the court. The defendants might and did render the remedy to be administered more difficult, but the right itself remained unaffected by their acts. It is a fundamental principle, that the rights of parties in the subject matter of litigation are to be determined as of the date of the commencement of the suit. After the court of chancery has taken cognizance of a cause and by service of process therein upon the defendant has authentically informed him of the redress sought to be enforced against him, it will not

permit him to trifle with it by disqualifying himself from obeying its final decrees therein. Under such circumstances, a defendant proceeds at his peril, and the court will do complete justice, so far as it is within its power, notwithstanding the attempted defiance of its authority by the defendant. The granting or refusing a preliminary injunction, in no way affects the rights of the parties in respect to the final judgment. *Wing* v. *Inhabitants of Fairhaven*, 8 Cush. 363; *Charles River Bridge* v. *Warren River Bridge*, 6 Pick. 376; *Gibbens* v. *Peeler*, 8 Pick. 254; *Florence Sewing Machine Co.* v. *Grover & Baker Sewing Machine Co.*, 110 Mass. 16; *Texas* v. *Hardenberg*, 10 Wall. 68.

The cases cited by the defendants in support of their contention that the sale of the notes and also of the stock on execution, as a matter of law, defeats this action of the orators, are clearly distinguishable from the case at bar, and if they were not, they are contrary to the law of this State and therefore not to be followed by this court.

The purpose of the orators' bill was to enable them to secure the stock in question for the benefit of the creditors of H. E. Folsom, and this purpose would have been accomplished, had an injunction such as they were entitled to have on the facts found, been granted them as of the date of the service of process in this suit, upon the defendants. By reason of the acts of the defendants committed since the service of process upon them, an injunction would now furnish them no relief. Whenever a court of equity has jurisdiction to entertain a bill for an injunction against the commission or continuance of a wrongful act, it may award damages in substitution for such injunction, when the defendant by his acts committed subsequent to the service of process upon him, has rendered relief by injunction ineffectual. *Hayden* v. *Yale*, 45 La. An. 362: 40 Am. St. 232; 2 Story, Eq. Juris. (6th ed.) § 794; *Nelson* v. *Bridges*, 2 Beav. 239; 1 Pom. Eq. Jur. §§ 236-240, and note 3 to § 237; *Milkman* v. *Ordway*, 106 Mass. 232; *Greenway* v.

*Adams*, 12 Ves. Jr. (Sumner's ed.) 395; *Woods* v. *Scott*, 14 Vt. 518; *Stimpson* v. *Putnam*, 41 Vt. 238.

The orators by the amendment to their original bill have so framed it as thereunder to entitle them to substituted relief in the way of pecuniary damages.

It is contended that the orators should have a decree for $20,000, the value of the stock at the time of its sale on execution and interest thereon from that date. This contention would be sound, were it not for the connection of the orator, Hazen, with the sale, and his duty as assignee in relation thereto. It was his duty as assignee, to protect the insolvent estate so far as it was in his power to do so, from the sacrifice of its assets, including this stock. It appears that about $8000 of assets had come into the hands of himself and his co-assignee. It was then provided by R. L. 1821, now V. S. 2103, that an assignee might redeem liens upon the goods or estate of the debtor, by order of the court of insolvency. Had he applied for such an order and it had been refused, he would have been exonerated from further duty to protect this stock from the attachment lien, but it does not appear that he applied for such an order, or did anything to save the stock for the insolvent estate, except to bring this suit at bar against the defendants. It was his duty to obtain such an order if he could. When the value of the stock, in comparison with the amount of the executions on which it was sold, is considered, it is not to be presumed that he could not have obtained it. The Merchants National Bank, when it sent him, as its president, to New Mexico to purchase the stock for it at the sale, knew the fiduciary relation in which he stood in respect to the stock as an asset of the insolvent estate. He caused the stock to be bid off for the bank at a sum $14,423.51 less than its then value. By making the assignee its agent in this transaction, with full knowledge of his fiduciary relation to the insolvent estate, including this stock, the bank cannot now hold the stock as against the estate, after

being reimbursed for the money it paid for it with interest thereon. One who participates with a trustee in the breach of his duty, cannot hold the fruits of such default of duty as against the *cestui que trust*. Standing thus, although the defendants were also in the wrong, the orators can only recover the sum for which the stock was sold, with interest thereon from the date of the sale, as damages.

> *Pro-forma decree reversed and cause remanded with directions to enter a decree against all the defendants for the sum of $5576.49 with interest from Dec. 28, 1894, with costs of suit.*

*Start* and *Taft*, JJ., dissent.