*SCHROEDER'S SYNDICS vs. NICHOLSON.*

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

By the laws of Louisiana, where an insolvent debtor makes a cession of his goods to his creditors and they accept it, there is a transfer of the property ; and a judgment *obtained in a court of the U. States, posterior to that* transfer, cannot affect the property ceded. The State has a right to regulate property within her limits, and to say how, when, and on what conditions, it shall cease to belong to one person and be transferred to another.

The *cessio bonorum* of the insolvents was accepted on the 11th December, 1829. At a meeting of the creditors, legally convoked, on the 19th January following, syndics were appointed ; the proceedings before the Notary returned into

court, and homologated on the 29th January, 1830. Pending these proceedings, to-wit: on the 19th January, 1830, suit was commenced against the insolvents, in the District Court of the United States, for the Eastern District of Louisiana, by C. and J. D. Wolf, citizens of the State of New York, and judgment rendered in their favor on the 30th of the same month. On the 1st February, execution issued, and the goods ceded by the insolvents, were levied on by the marshal, and subsequently sold for the sum of six hundred and sixty-nine dollars eighty-four cents. Between the seizure and sale of the goods, a motion was made, in the court of the United States, in behalf of the defendants and their syndics, to have the execution set aside and the property released from the seizure. The court, after argument, took the case under advisement, and discharged the rule.

This suit was brought to recover damages from the marshal, who set up in defence:—1st. The authority of the writ of execution from the court of the United States : and, 2d. the discharge of the rule to set aside the execution, which he averred had the force of *res judicata.*

There was a verdict and judgment for the plaintiffs in the court below, and the defendant appealed.

*Slidell* and *Maybin*, for appellant.

*Grymes*, for appellee.

*Porter, J.*, delivered the opinion of the court.

The insolvents made a surrender of their property, to their creditors, under the laws of this State, on the 11th December, 1829. On the same day, the cession was accepted by the judge. On the 19th January, of the following year, a meeting of the creditors was called before a Notary, who assented to the prayer of the petitioners ; accepted the cession of their goods and effects, and appointed syndics. On the 29th of this month, the proceedings of

Eastern District.
*April* 1831.

SCHROEDER'S
SYNDICS
*vs.*
NICHOLSON.

Eastern District,
    *April* 1831.

SCHROEDER'S
  SYNDICS
    *vs.*
NICHOLSON.

the creditors were returned into court, and by its judgment expressly homologated.

Between the period of filing this petition for a surrender and that of the homologation by the court, of the act of the creditors acceding to it, suit was commenced in the District Court of the United States, for the Eastern District of Louisiana, and judgment obtained against the insolvents, upon their confession of debt. On the first day of February, execution issued from this court; and, two days after, the marshal levied under it, and seized a portion of the merchandise which the insolvents had already transferred to their syndics. On the 8th, of the same month, he made a further levy; and on the 25th, sold the goods, so seized, for the sum of six hundred and sixty-nine dollars eighty-four cents.

After the seizure, and before the sale, a motion was made, in the court of the United States, by the defendants, and the syndics who are now plaintiffs before this court, to have the execution set aside, and the goods levied on, discharged from the seizure. The court, after hearing argument, and taking the case under advisement, discharged the rule.

This action is brought to recover damages from the marshal for these alleged illegal acts. He pleads in defence, the authority of the writ of execution issued from the court of the United States, and the discharge of the rule to set aside the execution; which, he avers, has the force of *res judicata.*

The last ground of defence must be first considered, for if sustainable, it precludes any examination of the merits.

A good deal was said, in the argument here, as to what was really put at issue, and decided in the court of the United States. Counsel have differed very much in their statements; and, it is obvious, we must decide on the record, and nothing else. On examining it, we find that no grounds are assigned for the rule; and no reasons are given by the

Eastern District,
*April* 1831

SCHROEDER'S
SYNDICS
*vs.*
NICHOLSON.

court for discharging it. We are left to conjecture, for nothing is proved. It is said, the syndics could not have appeared in that court, unless on a claim of property. This is a mistake. By the 396 article of the Code of Practice, a third person may file opposition to an execution, on two grounds:—one, that he is the owner of, the other, that he has a privilege on, the thing seized. In which light the plaintiffs appeared here, we cannot say; and the authority of the thing judged, takes place only with respect to what was the object of the judgment. Again, by our law, which we understand furnishes the rules of proceeding in the court of the United States, for Louisiana, it is a matter of very great doubt, indeed, whether a third party, *on a claim of property*, can have an execution set aside, otherwise than by a petition. The 398 article of the Code of Practice, is express to that effect. We do not know but it was on that ground the motion was dismissed; and if it were not, it is very questionable whether the refusal, by the court to enjoin in a case like this, can form a bar to a claim for damages. The code seems to consider this application an accessary to the investigation of the merits, which is to be made in a suit brought for that purpose. But without expressing any decided opinion on this point, we are clear that there is no satisfactory proof before us, that the question raised in this cause, was decided by the court of the United States; and we cannot presume it. Entertaining, as we do, an opinion entirely adverse to the correctness and legality of the defendant's conduct, *we* cannot suppose that the learned person who presides in that court, could have.decided, such conduct was conformable to law.—*Code of Practice* 398, 399, 400 *and* 401. *Ingersol's Digest, Ed.* 1825, 140.—5 *Martin, O. S.* 214.

Authorities have been read to us in order to establish, that the officer is protected by the writ, and cannot be affected by the irregularities of the judgment. This is true. But no

R 2

Eastern District,
*April* 1831.

SCHROEDER'S
SYNDICS
*vs.*
NICHOLSON.

By the laws of
Louisiana, where
an insolvent debt-
or makes a cession
of his goods to his
creditors and they
accept it, there is
a transfer of the
property, and a
judgment obtained
in a court of the
United States pos-
terior to that trans-
fer, cannot affect
the property ce-
ded. The state
has a right to re-
gulate property
within her limits,
and to say how,
when, and on
what conditions,
it shall cease to
belong to one per-
son and be trans-
ferred to another.

authority could sanction his taking the property of B, under an execution against A ; and that we understand to be the question before the court.

By the laws of Louisiana, where an insolvent debtor makes a cession of his goods to his creditors, and they accept it, there is a transfer of his property ;—it ceases to be his and becomes theirs. We are unable to distinguish between this change of ownership, and any other which may be made under the laws of the state, by the common forms of aliena. tion. And if a judgment, obtained in a court of the United States, posterior to that transfer, can reach back and avoid it, it must have the same power with regard to every other conveyance. This principle appears to us to strike at the sovereignty of the state, on a matter of the most vital importance to her, and in relation to which we did not suppose her supremacy was doubted. She certainly has a right to regulate property within her limits, and to say how, when, and on what conditions, it shall cease to belong to one person, and be transferred to another.

The decision of the majority of the court in the case of *Ogden* vs. *Saunders,* has been relied on, in order to shew that a discharge under the insolvent laws of a state, cannot be pleaded in bar to a suit by a creditor who is a citizen of another state. That decision may be admitted to its full extent, without impugning the principles we have just laid down. The authority of a state to discharge its citizen from legal proceedings against him, by a creditor who was never subject to its laws, either in his person, or by his contract, may be conceded, without at all affecting its right over property within its jurisdiction, and which it has power to regulate and controul. The judge who delivered the opinion of the majority of the court in that case, in illustrating his argument, says, a discharge under state insolvent laws, could not prevent the execution of a *capias ad satisfaciendum,* which issued from an United States' court. If

Eastern  District
*April* 1831.

SCHROEDER'S
SYNDICS
*vs.*
NICHOLSON.

he,  or those whose opinions he expressed, had thought these laws could not withdraw property which had been already transferred under them, from the operation of a *fieri facias* issuing from the same court, we presume he would not have omitted so striking an illustration.    The distinction between the case put by the supreme court and that now before this court, appears to us obvious.    Neither state insolvent laws, nor any other law of a state, can interfere with an execution of the courts of the United States, against the person or property of a debtor, so long as that property is his, or the debtor exists, unless in those cases where by process from the state courts, their execution may have obtained a precedence.    But state laws may have provided for certain modes of alienating property before the execution issues from the federal court; and if the property belongs to another, at the time the writ comes into the marshal's hands, there is no more reason for giving it effect on that property, than there would be to give a *capias* effect on the body of a debtor who had previously been condemned to capital punishment under a state law.    In both the one, and the other instance, there is nothing for the execution to act on.

The doctrine under which this act of the marshal is justified, seems to us to lead to the most alarming consequences. The suit in *concurso* is a remedy provided by state laws, to enable creditors to enforce their claims against a debtor.    Its constitutionality, so far as it affects creditors, citizens of this state, cannot be questioned.    This has been settled by the highest authority.

If then the proceedings, in the exercise of this remedy, have proceeded so far as to produce a change of property, and they are not of sufficient force to prevent a levy under a writ of execution from the United States courts, the same consequence must follow when a judgment of these courts, given in an ordinary case at the suit of a single creditor, is about to be carried into effect.    The writs of execution

Eastern District,
*April* 1831

SCHROEDER'S
SYNDICS
*vs.*
NICHOLSON.

from the tribunals of the United States will, in all cases, take precedence, and have a preference, over those of our state. The sheriff must surrender the property seized to the marshal; and the foreign creditor be paid in preference to the domestic creditor. We have looked in vain for any thing in the constitution of the United States, which gives this advantage to a citizen of another state, or a foreigner, over our own citizens; and which makes right depend, not on the contract, or the law of the contract, but on the tribunal where the remedy is sought.

Again, when is the right of preference to cease? If a change of property does not terminate it, what will? If it exist at all, it must have its source in a supposed right to the property of a debtor which a foreign creditor enjoys, and of which he cannot be divested by executions from state courts, or by transfers made under the laws of the country where the property is situated. If it be of that rigorous nature, it will follow the property into any hands it may come. Sales by syndics, or under an execution from a state court, will not affect it. Strange as this may appear, and absurd as is the consequence, yet there is not a single reason which can be given to invalidate the transaction before the court, that would not destroy any other alienation made under the laws of the state. The *concurso* is a remedy she gives her own citizens to enforce their claims against a debtor; and if that remedy does not assure to them the property they acquire under it, in case there is a foreign creditor, all her remedial laws are a mockery, and worse than a mockery.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed with costs,