Hayden, Syndic, vs. Yale & Bowling.

---

### No. 11,114.

### JAMES T. HAYDEN, SYNDIC, VS. YALE & BOWLING.

1. A citizen of the State of Louisiana, having made a voluntary cession of his property, including real estate in Mississippi, and obtained the judge's order of acceptance for the benefit of his creditors; and, subsequently thereto, one of the creditors enumerated on his schedule, and domiciled in Louisiana, having instituted an attachment suit in a Mississippi court and caused the insolvent's Mississippi property to be seized and advertised for sale under a judgment therein procured; and said creditor having thereafter transferred and assigned his judgment to citizens of the State of Mississippi, with full subrogation; *Held,* that a court of the State of Louisiana has jurisdiction and authority over its citizens *in personam* to compel them to do justice; and the court of first instance to prevent the aforesaid creditor from defeating the operation and effect of the said assignment and thereby obtaining a preference over domestic creditors, notwithstanding his proceedings were directed against real property situated in Mississippi. Such creditor is within the territorial limits of the jurisdiction of the court and amenable to its process.

2. Equity acts *in personam* primarily, and when a person against whom relief is sought is within its jurisdiction, the court may make a decree upon the ground of an *act,* or *contract,* or an equity subsisting between the parties, respecting property situated beyond its jurisdiction, or to prevent anything being done abroad, whether the thing forbidden be a conveyance, or other act, *in pais,* or the institution or prosecution of an action in a foreign tribunal. And, as a necessary corollary of that power, such court may order the *person* violating the principles of equity to restore the proceeds and avails of the reprobated transaction as justice may require, and in accordance with the principles of the *lex loci rei sitæ.*

3. It is the accepted jurisprudence of the States of the Union that, in case of voluntary assignment, a surrender, if valid where made, is valid everywhere, unless repugnant to the policy of the *lex loci rei sitæ,* and in detriment to rights of domestic creditors within that jurisdiction; because such cession or assignment is the exercise of a *personal* right of the owner to dispose of his property as he chooses.

Hayden, Syndic, vs. Yale & Bowling.

APPEAL from the Civil District Court for the Parish of Orleans.
    *Ellis, J.*

### *Harry H. Hall* for Plaintiff and Appellant:

1. The syndic of Louisiana insolvents can recover from a Louisiana creditor who is a party to the insolvency proceedings a fund which the latter has secured by attachment suit in Mississippi.
2. A voluntary assignment valid where made is valid everywhere, provided it be not detrimental to the creditors of the *rei sitœ.* A. and E. Enc., Vol. 8, p. 287; 7 Mich. 36; 36 Ill. 133; 122 Tel. 551; 36 Fed. Rep. 279; 21 How. 126; 2 An. 659.
3. An involuntary assignment is inoperative beyond the limits of the State by whose laws the transfer is made, but where it does not conflict with the *rei sitœ*, and resident creditors' rights are not affected, the foreign assignment will be respected from comity. A. and E. Enc., Vol. 8, p. 284; Porek, pp. 138, 139; 2 Ben. (in D. Ct.), 53; 5 An. 678.
4. Where the rights of a domestic creditor are not concerned, the transfer should be given the same force and effect as in the State under whose law it is made. 8th Vol. A. and E. Enc. 284, 287; Rorer, 138; 32 Fed. Rep. 280; 42 Md. 474; 16 Pick. 25; 71 Md. 514; 36 Am. Rep. 345.
5. And where all the parties are citizens of the same State, one of them can not secure a preference over his fellow citizen by attaching property in another State. A. and E. Enc., Vol. 3, 615; 19 N. Y. 642; 18 N. Y. 362; 10 N. H. 260; 14 N. H. 38; 42 Md. 474; 16 Pick. 335, 25; 11 Gray 37; Wharton, Confl. L. 310, 369, 276, *et seq.*; 32 Mo. 251, 240; 37 An. 522; 86 Pa. 291.

### *Thos. J. Semmes* for Defendants and Appellees:

1. Lands situated in another State are not affected by a surrender made in this State, and therefore they may be attached by a Louisiana creditor.
2. At all events the only remedy the Louisiana syndic has is to enjoin the Louisiana creditor from prosecuting his suit. He can not recover from said creditor what he may realize from a sale or transfer of the judgment recovered in the suit. 133 U. S. 107; 131 Mass. 506; 18 Pick. 247; Story, Confl. Laws, Sec. 428; Cockrell vs. Dickens, 3 Moore Prv. Cases, 130.

The opinion of the court was delivered by

WATKINS, J. Haynes & Rogers, availing themselves of the insolvent laws of this State, as a firm and as individual members thereof, made a cession of their property to their creditors, in due form of law, and same was duly accepted by the proper judge for the benefit of their creditors.

Amongst other assets surrendered was a tract of valuable land with improvements, situated in Laflore county, State of Mississippi.

Prior to the cession and surrender of said insolvents the present defendants instituted suit against them upon a debt of some $2300

and obtained the sequestration of 113 barrels of sugar; but by the operation and legal effect of the cession of the defendants, Haynes & Rogers, this seizure was released, the sugars were transferred to the possession of the syndic, and the sequestration suit was cumulated with the insolvency proceedings, where they have since remained undetermined.

The commercial firm of Yale & Bowling is, and was at the time of the cession, a citizen of Louisiana, domiciled in New Orleans, and likewise was James Bowling, one of the members of the copartnership, though Cyrus Yale, the other member, was a citizen of New York; but he died *pendente lite* and *his* residence is eliminated from the case as a controvertible question.

Immediately after the cession the defendants instituted suit against Haynes, one of the insolvents, in the Circuit Court of Leflore county, Mississippi, and procured the attachment of the lands that are embraced in and covered by the schedule of the insolvents, and prosecuted that suit to judgment.

Thereunder they caused suitable writ to issue, and said lands to be ordered sold at auction, and same were thereunder sold subsequently, realizing $2000, approximately, as proceeds thereof.

Pending sale proceedings, the defendants, Yale & Bowling, assigned all their rights in and to said *judgment* to certain *citizens of the State of Mississippi*, who became the adjudicatees of said property.

This suit has for object a recovery from the defendants, Yale & Bowling, by the syndic, the proceeds and avails of the sale of said real estate, on the ground that they, as *Louisiana creditors* of the insolvents, were bound by the insolvency proceedings, and had no legal right to lay an attachment on the *property of insolvents*, though situated in Mississippi, and thus defeat the operation of the insolvency laws of the State of Louisiana thereon.

The averment of plaintiff's petition is that Yale & Bowling have the proceeds of the sale of said land in their possession "in violation of the laws of this State, and more particularly of the insolvent laws thereof, to which they, individually and as a commercial firm, were subject and amenable. That said writ of attachment issued in violation of the rights of the insolvency aforesaid, and that said judgment was obtained by said Yale & Bowling in violation of said rights; and that said proceedings can not vest in them the right to

retain said money; and that petitioner is entitled to recover the same from them," etc.

On the trial judgment was pronounced in favor of the defendants, and the plaintiff has appealed.

The contention of the defendant's counsel is that "if the property attached had been *personal* property, the syndic, perhaps, might have enjoined Mr. Bowling from prosecuting the (attachment) suit" in the Mississippi court; but as "*lands* situated in Mississippi *do not pass to the creditors, or become assets of the insolvent in Louisiana, therefore Louisiana creditors are not affected by an attachment of such lands at the instance of a Louisiana creditor.*"

*Per. contra*, the contention of plaintiff's counsel is that—

"This is not a suit which seeks to affect real estate, as such, in Mississippi. That it is a suit which seeks to restore to the common fund of the Louisiana insolvency proceedings an asset which had been diverted by a Louisiana creditor, who was passively and actively, theoretically and practically, a party to these proceedings.

"He is sought to be deprived of the undue advantage he has attempted to take of his co-creditors, because, but for his action, the Louisiana syndic would have been able to realize upon this Mississippi asset and bring its proceeds into the Louisiana courts.

"And the question therefore is, not whether a Mississippi court will give effect to the insolvent laws of Louisiana to the prejudice of any attaching creditor, but it is whether or not a Louisiana court will permit a *citizen of this State, bound by its insolvent laws, and an actual party to the insolvent laws in question, to enforce a Louisiana contract by diverting in a sister State an asset of the insolvent from his co-Louisiana creditors.*"

The pertinent provisions of the insolvent laws are:

1. That the debtor making a "voluntary surrender," or "cession of his property to his creditors," "shall annex to his petition his schedule, (which) shall * * contain a statement of *all his property,* as well movable as immovable, and his rights and actions," etc. R. S., Sec. 1786.

2. That upon being convinced that the debtor has complied with all the formalities prescribed by law, the judge "shall endorse on the schedule that the cession of *all the property of the insolvent is accepted for the benefit of his creditors.*" R. S., Sec. 1789.

3. That "from and after such cession and acceptance *all the prop-*

*erty of the insolvent debtor mentioned in the schedule shall be fully vested in his creditors, and the syndic shall take possession of and be entitled to claim and recover all the property,* and to administer and sell the same according to law." R. S., Secs. 1791 and 1794.

In view of the foregoing unambiguous provisions of the insolvent laws, it seems apparent that the insolvent, Haynes, passed to his creditors, through the instrumentality of his cession and its acceptance, an undoubted title to his *Mississippi realty,* as well as to his Louisiana estate generally.

Such are the terms of his schedule and the judge's acceptance of his cession; and, as a matter of law, those provisions are read into the judge's order of acceptance independently of the terms of the cession and the schedule.

Such a thing as a partial surrender by an insolvent is not contemplated, for the law plainly declares that his schedule *shall contain* a statement of *all* his property. Duncan vs. Duncan, 3 M. 232; Schroeder vs. Nicholson, 2 La. 354.

*All* the debtor's rights and property pass to his creditors by his surrender, whether placed upon his schedule or not, and the syndic may sue to recover them. 11 La. 531; 12 La. 109; 2 R. 133; 8 R. 123; 9 R. 32; 4 An. 490.

The acceptance of a cession vests the property in the creditors, so as to be *no longer liable to seizure or execution.* 2 R. 187; 9 R. 219; 3 An. 387; 4 M. 562; 4 An. 490.

Nothing done after acceptance of the cession can affect the creditor's rights. Bowles vs. Creditors, 4 An. 680.

There is no positive declaration of our law to the effect that the cession shall include property of the debtor *situated in another State;* but we think the contemplation of the law clearly is that such property should be included in his schedule. But whether such is or is not the law, in this instance the insolvent, Haynes, *did* surrender his Mississippi property to his creditors generally and it is covered by anp included in the judge's acceptance.

Accepting this as a proper construction to be placed upon the cession and acceptance of Haynes, the *status* of the property in Mississippi is fixed *quoad* Louisiana creditors at least, and as, in *this controversy, no Mississippi creditors* are concerned, and none of them are made parties to this suit, it seems clear to our minds that this

court has jurisdiction *to deal with the parties before it,* as law and equity require.

While it is quite true that, with reference to the extraterritorial effect of insolvent laws, there has been a great contrariety of State decision, and particularly with regard to their operation and effect upon *real* property situated *without* the territorial limits of the State of such insolvent laws; yet it may be accepted as axiomatic that, in case of *voluntary* assignment or surrender, if valid where made it is valid everywhere, unless repugnant to the policy of the *lex rei sitæ* and in detriment to rights of domestic creditors within the latter jurisdiction, because such an assignment is the exercise of a *personal* right of the owner to dispose of his effects as he chooses.

And further, that where rights of creditors of the domicil are not concerned, the courts of a *foreign* jurisdiction will permit an assignee or receiver of *another* jurisdiction to take possession of the insolvent's property found within the limits of the former and remove same or its avails into the latter in pursuance of the laws thereof. 8 Vol. Am. and Eng. Enc. of Law, pp. 284, 287; and the numerous adjudicated cases cited in notes.

It is likewise axiomatic that in cases of a conflict between the law of the former and that of the *rei sitæ,* or the custom of the place where the property is situated; the latter will prevail. Roren's Interstate Law, p. 138.

These principles of law and comity being conceded and accepted, what is the state of the case before us?

At the time of the surrender and acceptance, the Mississippi property was included in the schedule of the insolvent, Haynes, who was and is a citizen of Louisiana, and passed to the creditors of said insolvent by the acceptance of his cession, and among the number to the defendants, Yale & Bowling.

At that time there were no creditors of the insolvent, Haynes, in the State of Mississippi, and no suit or proceeding pending in the courts of that State, in any way affecting his person or property there, or his cession in the State of Louisiana.

Consequently, the effect of the attachment of the property of Haynes, in the State of Mississippi, by Yale & Bowling, subsequently to the cession of Haynes & Rogers in Louisiana, and their assignment of their judgment to citizens of the State of Mississippi, pending sale proceedings thereunder, was to defeat the claims of the

syndic of the insolvent thereupon, and put it beyond the control of the Louisiana creditors of the insolvent.

The question propounded by plaintiff's counsel then recurs: Will a Louisiana court permit a citizen of this State, bound by the insol vent laws and a party to the insolvent proceedings in question, to thus divert a portion of the property of the insolvents that is cov ered by the cession.

We have been cited to no case that has been decided by this court where this question has been directly involved and adjudicated, and we know of but one—and that is Prager vs. Micos, 36 An. 75— though the discussion is not elaborate nor is the reason for deciding assigned. But there are two adjudications of this court in *similar* cases, where, to our thinking, this principle has been recognized. One of those cases is McDowell vs. Read, 3 An. 391, in which occurs this declaration, viz.:

" In relation to annulling the deeds of trust the judge was of opinion that the situation of the real property out of the jurisdic tion of the State was an obstacle to the courts rendering any judg ment, where the object was to recover it.

" We think the case referred to by the counsel for the plaintiffs establishes the principle that where a court is called upon to enforce a right it may avail itself of *its jurisdiction over the person to do justice relative to a subject matter beyond its territorial jurisdiction, though lands be affected by the decree.*

" The *contract* made here between the defendants and Mount is the subject matter upon which the court is called upon to act. Its validity is drawn in question. The responsibility of the trustees to other creditors than those provided for depends upon its legality. Even if the judgment to be rendered should not be efficient in the State where that property is situated, that fact, were it ascertained, we think, would not be sufficient to authorize the court to withhold its action upon the contract."

The other case is Mussina vs. Alling, 11 An. 568, in which Mc Dowell vs. Read was quoted and referred to with approval.

" That cause," say the court, " was remanded to ascertain if the garnishee, resident in New Orleans, had any *money in his hands, the proceeds of certain lands and slaves in Mississippi,* which, by a con tract made in New Orleans, had been conveyed to him in trust, with power to sell, for the benefit of certain preferred creditors of the

grantor, who was the defendant in execution, and to the prejudice of the complainant, who resorted to the garnishee process. The court only intimated by its judgment that if the garnishee *had money in his hands, the proceeds of this arrangement made in Louisiana, between Louisiana citizens, in violation, or in fraud of her laws, he should not be protected by his own reprobated contract from paying it over to the seizing creditor.*" (Our italics.)

In the instant case plaintiffs do not demand the revocation of the judicial sale, made of the Mississippi real estate of Haynes, to the assignees of the judgment of Yale & Bowling, in the courts of Mississippi, against Haynes.

He does not question the jurisdiction or authority of the Mississippi court to render such judgment and to cause such sale to be made. He does not deny the correctness or regularity of those proceedings in any respect. He does not assert that the assignees of said judgment were in any manner subordinated to the control of the Louisiana insolvency proceedings. But he does claim that the Louisiana Court had undoubted jurisdiction over the insolvency of Haynes & Rogers and over the other defendants, as citizens of Louisiana, bound by those insolvency proceedings to compel them to do justice relative to the *money in their hands as proceeds of the Mississippi property of Haynes, in fraud of our law and in violation of the rights of the domestic creditors of said insolvent.*

It is the *act* and *contract* of the defendants with which the court was called upon to deal, and not the *property* in Mississippi, nor the assignees of Yale & Bowling's judgment in Mississippi.

The Massachusetts court had this identical question before it in the case of Cole vs. Cunningham, 142 Mass. 47, and it may be instructive to analyze it with reference to the facts of the instant case.

Daniel C. Bird, a citizen of Massachusetts, being unable to meet his bills at maturity, suspended payment, being at the time indebted to Butler, Hayden & Co., citizens of and doing business in the same State. Being informed of their debtor's suspension, said creditors made an assignment of their claim to a citizen of New York, who at once instituted suit in a court of *that State* against Bird and garnisheed Claflin & Co., who were indebted to him.

Subsequently regular insolvency proceedings were instituted in a Massachusetts court and assignees were duly appointed for the in-

solvent estate of Bird, the firm of Butler, Hayden & Co. being present and participating therein.

Thereafter the assignees brought suit in a court of Massachusetts against Butler, Hayden & Co., enjoining and restraining them "from proceeding to further continue the suits against Bird ° ° ° and from attempting to collect by suit or otherwise * * * any money or other thing on account of the claim against Bird * * * or that they be ordered to transfer to the assignees all their right, title and interest by, or under, or on account of their claim * * * so that the assignees may, as the effect of said order, have *full right to receive all money due from Claflin & Co. without any hindrance or interference of Butler, Hayden & Co. therewith.*

Upon this state of facts the Massachusetts court held and decided:

" In the case at bar it is true that the defendants had made their attachment * * * in New York before there had been any assignment in insolvency in this State actually executed, but this was done with full knowledge on their part that the debtor, Bird, was embarrassed and had suspended payment, and, necessarily, with intent to avoid the effect of the assignment, so far as the property attached was concerned.

" *As residents of this State they can not be allowed to this extent to defeat the operation of the assignment, and thus to obtain a preference over other creditors resident here. They are within the limits of the jurisdiction of this court and amenable to its process, and should be enjoined from prosecuting a suit, the effect of which, if successful, will be to work a wrong and injury to other residents of the State.*" (Italics are ours.)

We understand plaintiff to demand that identical relief here, and, for a stronger reason, should his prayer prevail, because Haynes & Rogers had made a cession in a Louisiana court, the effect whereof was to dissolve a previous suit and sequestration of the defendants and transfer same into the insolvency proceedings; and subsequently thereto they instituted suit in their own names in the State of Mississippi, on the same debt, against one of the insolvents, and caused to be attached property which was included in the insolvent's schedule. Nor was that all. They obtained a judgment in the Mississippi court, recognizing their privilege as attaching creditors, and entitling them to be paid from the proceeds of sale of the attached property when made, and issued execution and caused the property

to be seized and advertised for sale. Thereupon they made a *bona fide* and actual transfer of their judgment, with full subrogation, to citizens of the State of Mississippi, to whom the property of Haynes was adjudicated by an indefeasible title.

By this means the property was diverted from the Louisiana insolvency, and its proceeds and avails appropriated exclusively by Yale & Bowling to the detriment and injury of other creditors of the insolvent, and in direct violation of the letter and spirit of Louisiana insolvent laws.

The case of Cole vs. Cunningham was appealed to the Supreme Court, and was therein affirmed. 134 U. S. 107. In treating this question the court made an elaborate summary and analysis of authority, and in the course of their opinion said:

"The jurisdiction of the English Court of Chancery to restrain *persons within its territorial limits and under its jurisdiction from doing anything abroad,* whether the thing forbidden be a conveyance or other act *in pais,* or the institution or prosecution of an action in a foreign court, is well settled."

So in Penn vs. Lord Baltimore it was held to be a well recognized principle that, as equity acts *in personam* primarily, the court may, where a person against whom relief is sought is within the jurisdiction, make a decree upon the ground of a contract or any equity subsisting between the parties respecting property situated outside of the jurisdiction. 1 Ves. Sin. 444; 2 Law Cases in Eq. 1806.

In Massie vs. Watts, 6 Cranch, 148, Chief Justice Marshall speaking for the court said of an action which was instituted in Kentucky to compel a conveyance of the legal title to land situated in Ohio:

"This court is of opinion that in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable *wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree.*" (Our italics.)

A similar doctrine is announced in Pennoyer vs. Neff, 95 U. S. 714; also in Watkins vs. Holman, 16 Pit. 25, and Corbitt vs. Nutt, 10 Wall. 464.

In Phelps vs. McDonald, 99 U. S. 298, the Superior Court puts the proposition thus clearly and forcibly:

"Where the the necessary parties are before a court of equity it is immaterial that the *res* of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribu-

nal. It has the power to compel the defendant to do all things necessary, according to the *lex loci rei sitæ* which he could do voluntarily, to give effect to the decree against him. Without regard to the situation of the subject matter, such courts consider the equities between the parties, and decree *in personam* according to those equities and enforce obedience to their decrees by process *in personam.*"

Judge Story announces a similar doctrine:

"It is now held," says that author, "that whenever the parties are resident within a county, the courts of that county have full authority to act upon *them personally*, with respect to the subject of suits in a foreign county, as the ends of justice may require, and, with that view, to order them to take, or omit to take, any steps and proceedings in any other court of justice, whether in the same county or in any other foreign county." Story's Eq. Juris., Secs. 899 and 900.

In Allen vs. Buchanan, 11 Southern Reporter, 777, the Alabama court very forcibly and perspicuously states and approves this doctrine. Our own jurisprudence is likewise in accord with that principle. Edwards vs. Ballard, 14 An. 362.

To the same effect a great many other decisions of the highest courts in different States in the Union might be cited in affirmance of the same principle, but we deem it unnecessary to quote them. On reason and authority we think it clear that the *act* and *contract* of the defendants, with relation to the Mississippi property of the insolvent, Haynes, was in clear and direct violation of the insolvent laws of this State, and in derogation of the rights of his domestic creditors, and that this court has undoubted jurisdiction and authority to compel them to surrender and pay over to the plaintiff, as syndic, the money they realized from the transaction.

In our opinion it is immaterial that the defendants only assigned their judgment pending the sale proceedings in Mississippi; the important and distinguishing feature of the transaction was that they made an assignment to citizens of Mississippi, and thus created a barrier that was impassable by the syndic.

The amount realized by the transaction was $2035, and for this sum plaintiff is entitled to judgment.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is now or-

dered and decreed that the plaintiff do have and recover of and from the defendants the sum of $2035, with legal interest from judicial demand, and all costs of both courts.

### ON APPLICATION FOR REHEARING.

One of the grounds on which counsel rely for a rehearing is, that while it is true that a court having jurisdiction of the parties has the power to make a decree affecting real estate beyond that jurisdiction in so far as such parties are *personally* concerned, yet that it is equally true that such court, *not* possessing jurisdiction of the *situs* of such realty, is powerless to make a decree for the sale or transfer of the same.

This proposition is distinctly announced in our opinion, and is the foundation of it, and the very reason on which we found and held the defendant personally responsible to the syndic of Haynes was that by the assignment they had made of their claim and judgment to *citizens of Mississippi* the courts of that State had caused his land therein situated to be sold and placed beyond the reach of the syndic—it being the established jurisprudence of the courts of the country that there is only a rule of *comity* existing among the States whereby the rights of non-residents can be enforced in the *absence* of resident creditors, or claimants to property situated within the limits of the latter's State.

They claim that our judgment is excessive in amount, and should be reduced from $2030 to $1600. We think the amendment should be allowed, and it is so ordered, and, as thus amended, our former decree is maintained.

Rehearing refused.