The opinion of the court was delivered by
Blanchard, J.
On January 24, 1895, the St. Charles Hotel Company, of New Orleans, let a contract to T. Nicholson & Sons, of Chicago, for the erection of the St. Charles Hotel building. The amount agreed to be paid was $2J9,321.00.
The contract was recorded in the mortgage office February 21, 1895, twenty-eight days after its execution.
One of the stipulations therein was that the contractors should furnish bond and security in the sum of $100,000.00, and the contract was not to go into force until the bond was executed. The bond was given February 11, 189'5, and recorded in the mortgage office on the 21st of that month.
On March 9, 1895, Nicholson & Sons let a sub-contract to James Hay, of Chicago, for the carpenter, wood and mill-work, materials therefor, etc., at the price of $60,000.00. This sub-contract was recorded in the mortgage office December 19, 1895.
*1583 On April 6, 1895, Hay contracted with Peter Y. Erazer, of Minneapolis, Minnesota, to supply all the mahogony mill-work and interior finish, all the quarter-sawed white oak mill-work and interior finish, all the poplar mill-work and interior finish, and cypress doors, that were needed for the hotel, with other materials, for the sum of $16,300.00,
This contract does not appear to Have been recorded in the mortgage office.
In fulfilling his contract with Hay, Erazer purchased from the Otis Manufacturing Company, of New Orleans, and from O. L. Willey, of Chicago, the mahogany and oak needed — in the aggregate about fifty-five hundred dollars’ worth.
Beyond freight charges and other small credits, Erazer paid nothing to these parties, and at the time this litigation began he owed the Otis people $2,671.70 and Willey $2,433.96.
On December 18, 1895, about the time the hotel building was completed, Willey and the Otis Company, separately, brought suit against the Hotel Company, Nicholson & Sons, Hay, Frazer, The American Surety Company and James G. Clark — the two latter being sureties on the bond Nicholson & Sons had executed in favor of the Hotel Company.
The purchase by Erazer of the oak and mahogany timber is alleged, and also that it was used in the construction of the hotel with the knowledge and consent of the Hotel Company, the contractor and sub-contractor, Hay.
It is set up that the amount of the bond which the owners required the contractors to give, was not for the sum the law required, and that because of the failure to exact the bond the law stipulated for, the owners, the Hotel Company, made themselves liable for the payment of petitioners bills for materials furnished and used in the building.
A writ of attachment was asked against Erazer, a non-resident, and averring that the Hotel Company, Nicholson and Hay, were indebted to him, they were cited as garnishees.
The prayer of the petitions is for judgment against all of the defendants in solido, that the attachment be maintained, etc.
On the 21st of November, 1895, prior to the filing of the Willey and Otis suits, the Connecticut Mutual Life Insurance Company brought an action against P. Y. Erazer for the sum of $7,965.00, with interest, *1584 alleged to be due on certain notes executed by Frazer, and averring his non-residence and that James Hay was indebted to him, prayed that a writ of attachment issue, that Hay be cited as garnishee, and for judgment against Frazer for the amount claimed, with privilege on the property attached, etc.
On December 2, 1895, Boyd N. Johnson, of Minnesota, took similar proceedings on certain notes held by him against Frazer for $2,781.41, making Hay garnishee.
And on December 5, 1895, W. W. Johnson & Oo.¡, of Minnesota, likewise sued Frazer on notes they held against him for $2,716.30, and under writ of attachment cited Hay as garnishee.
Iiay, garnishee, answered the interrogatories in the Insurance Company’s case on November 30, 1895, and in the Thompson and Johnson cases on December 9, 1895. In each he sets forth his contract with Frazer, by the terms of which he was to furnish all the interior materials for the St. Charles Hotel, annexed a copy of the contract to his answers, and stated that at the time of service of the garnishment process upon him he had paid to Frazer under the contract $9,910.44 and would owe him a balance, but could not at that time state accurately what such balance would be. He further answered that he believed by January 1, 1896, all matters between him and Frazer would be adjusted and that he would then be able, in a supplemental answer to be filed, to state exactly what moneys he held for account of Frazer. On December 24th and 27th, respectively, he filed similar answers to the interrogatories in garnishment served upon him in the Willey case and the Otis ease.
In these latter cases, the other garnishees, to-wit: — the St. Charles Hotel Company and Nicholson & Sons, answered all the interrogatories in garnishment in the negative — that they owed Frazer nothing and had in their possession no rights, credits or property of his.
On February 10, 1896, James ITay filed in the Otis Manufacturing Co.’s case a petition of interpleader. He set forth the various suits in which he had been cited in garnishment as a debtor of P. V. Frazer, and stated the exact balance he was due Frazer under his contract with him to be $6,544.25. He averred his inability to deposit (this sum in court because held back from him by Nicholson & Sons and the St. Charles Hotel Company, who had been sued directly for the amounts claimed by O. L. Willey and the Otis Manufacturing Company. He *1585 asserted that the parties pursuing him could have no possible claim against him beyond the balance he owed Erazer under his contract, which balance, as far as he could control the same, he was ready to pay to such person or persons as the court may decree entitled to same. He prayed that all the parties in interest be cited to form a concursus and to litigate among themselves in one proceeding their respective and rival claims to the fund, and for final judgment directing to whom the same should be paid and discharging him from further liability.
Following this one of the creditors who had brought an attachment suit against Frazer took a rule in erfh of the pending suits, suggesting the petition of interpleader filed by Hay and his admission of indebtedness, and asked, that an order be inade consolidating all of the suits with the case of the Otis Manufacturing Co. vs. The St. Charles Hotel Company, et als. — the one in which the petition of interpleader had been filed.
These rules were made absolute, without objection, and later, to-wit— on April 14, 1898, by agreement of counsel, all the eases were consolidated with that of O. L. Willey vs. The St. Charles Hotel Company et tils., without prejudice to the rights or priorities already acquired by the parties litigant respectively.
The case thus became a 'concursus and is an all-around fight for tire balance due to Frazer under his contract with Hay for materials, etc., furnished in the construction of the hotel building.
The balance is, as wo have seen, in the hands of the Hotel Company, wlio, being sued directly by Willey and Otis for the amount claimed by them on account of materials alleged to have been furnished and used in the building, withheld the same from Nicholson & Sons, contractors, who, in turn, withheld the amount from their sub-contractor, Hay, who owes it to Frazer, or Frazer’s creditors, as the court may determine.
None of the claimants to this fund imake any pretense of connection with the construction of the hotel building except Willey and the Otis Company.
The ’wo latter claim a lien on the building as furnishers of materials wnich entered into its construction, and, thus, as creditors of Frazer, to whom the fund is due, they claim the right to be paid out of it by preference over the attaching creditors. In assertion .of this *1586 right they filed petitions in intervention and third opposition in the case of the first attaching creditor, the Connecticut Mutual Life Insurance Company.
But they do not rest their case alone on the lien so asserted. That may be lost by failure to reduce to writing, or seasonably record contracts, etc. C. C. 2772, 2775, 3272, 3273; 48 La. Ann. 763.
They go further and ask judgment directly against the owners of the building because such owners did not comply with the provisions of Act No. 180 of 1894 in exacting a proper bond from the contractors.
All the other parties to this litigation deny the existence of the lien asserted by Willey and the Otis Company, and as to their claim to be paid by preference out of the Frazer fund, the other creditors of Frazer strenuously resist the same.
The St. Charles Hotel Company denies any liability to Willey and the Otis Company, and avers its position to be that of innocent stake holder, and, being such, contends that if any judgment be rendered against it, the same be upon such conditions as will protect it (the Company).
The only stipulation found in the contract made by the Hotel Company with Nicholson & Sons, relative to bond and security, is the following :
“The contractors bind themselves to procure and furnish the bond of some solvent surety company satisfactory to the proprietors, in the sum of one hundred thousand dollars for the faithful performance on their part of all of the stipulations of this contract, which shall not go into force until said bond is furnished.”
Bond in accordance with this was given.
On July 14, 1894 — some six months -prior to the letting of the contract aforesaid — a law was enacted entitled “An Act relative to contracts for builldings and the security of workmen and furnishers of material.” One of its provisions is that any person who makes a contract for $1,000.00 and over, with a builder or contractor to construct or repair a building shall require of such builder good and solvent security to the full amount of the contract, “for the payment of all the workmen, mechanics and laborers and all those who furnish materials and supplies actually used in the building.” And it is further expressly stipulated that “should the owner fail to require of the contractor such good and solvent security and to record the contract, with the bond and security, in the mortgage office, describing and giving *1587 the name of the security, within one week after the contract is signed and before the work is commenced, such owner shall be personally liable for all balances due to the workmen, laborers and furnishers of materials used in the building.”
Act No. 180 of 1894.
The evident object of this statute is to grant further and additional safe-guards to workmen and material-men for the payment of their claims, over and above what is contained in the Civil Code. See Arts. 2772 et seq; 3272 et seq.
It requires the owner to see to it that the person ha lets the contract to gives security for the payment of all workmen, mechanics and laborers, and all those ivho furnish materials actually used in tha building. This security, in its amount, is to equal the full amount fo:j which the contract is let; and the declaration is plain and emphatic that neglect or failure on part of the owner to require of his contractor such a bond subjects him to personal liability for all balancea that may become due to the workmen, laborers and furnishers of materials used.
This liability is independent of any privilege, which, under preexisting laws and reiterated in the statute we are construing, exists in favor of workmen and material-men.
McKeon vs. Sumner Building & Supply Co., 51 La. Ann. 1967.
Nor are the terms of the Act of 1894, so far as they who furnished materials are concerned, confined to those who deal with the contractor or his immediate sub-contractor. They are made so broad and comprehensive that they include all persons who furnish materials used in the building, even those who deal with remote sub-contractors, and whether the contracts or agreements for such materials are made in or out of the State.
The test supplied by the statute is, did the party who complains of non-payment furnish materials actually used in the building. If he did, and the owner has not complied with the statutory requirement as to the bond to be exacted from his contractor, he is liable.
Nor can he with reason complain of this, since, by exacting from his builder the bond the law calls for and seeing to its seasonable registry, and that of the contract upon which it is based, in the mortgage office, he (the owner) escapes liability.
The bond in the instant case was not such ah one, in its amount, as fulfilled the mandate of the law, nor were the contract and the bond *1588 recorded in the mortgage office within one week after the contract was signed, as the statute required.
This failure of compliance with the law developed the conditions out of which the personal liability of the Hotel Company ensues, provided it is established that the materials furnished by Willey and the Otis Company to Frazer were actually used in the construction of the building'.
The court can not permit its action to be controlled by a consideration of the consequences which may flow from the execution of a given law. That is a legislative function.
The province of courts is to construe laws as they find them and give effect to their evident meaning and intent.
The question of fact, whether or not the materials sold by Willey and the Otis Company to Frazer and for the purchase price of which they demand the amounts herein sued for, were, in the language of the statute, “actually used in the building,” arises.
These claimants brought their suit seasonably, and if their materials were actually used in the hotel building then is their case made out and they are entitled to the personal judgment they seek against the owners.
The evidence satisfies us that the lumber (mahogany aud quarter-sawed oak) mentioned on the'bills filed herein by the said claimants, was used in the construction of the building.
Willey and Klepstein, his inspector of lumber, testify to the identification, reasonably so, of his lumber in the building, and it is found in the evidence of Willey that Frazer bought lumber in the rough from him for the St. Charles Hotel, manufactured it-into finer forms and acknowledged after its manufacture that it was his lumber, and promised to give him an order for his money on James Hay and the St. Charles Hotel people. Klepstein testifies to shipping the oak, himself, for Willey to Frazer to be used in the hotel, and afterwards was at Frazer’s factory in Minneapolis and saw it being manufactured into panels, etc., for the hotel, and it was pointed out to him by Frazer as such, with the statement it was the Willey lumber.
The evidence as to the Otis Company’s lumber being used in the hotel is even, strouger.
There is, as early as May 23, 1895', the letter of Rotcha, Frazer’s agent, enclosing an order for mahogany “for the St. Charles Hotel” *1589 and making mention of Sully, the hotel architect, to whose test of inspection the lumber would have to be submitted. The written order for the lumber, enclosed in this letter and signed by Frazer, after mentioning the lumber wanted, number of feet, etc., says “for the St. Charles Hotel.” Then there is a letter from Frazer to the Otis Company, dated September 18, 1895, in which he encloses them his notes at 60, 90 and 120 days to cover his account with them, and states “my understanding is that the lumber was not to be paid for until I received the last payment on the St. Charles Hotel, but I send these notes thinking you can use them in the meantime, and the day of payment will not be put off so long.”
The testimony of Roland Otis is to the effect that he sold mahogany lumber to Frazer with which to supply the interior work of the hotel building and that it was used for that purpose, he having identified it in the building. This is corroborated by Huddleston, an employee of the company, and by IT. A. Otis, the president of the company. Roteha, a salesman and estimater for Frazer, testified that Frazer purchased from the Otis Company material to be used in the manufacture of interior finish for the hotel building, and that Frazer received the material, manufactured it and used it in the hotel.
There is no evidence offered by the opposition to the contrary of this, beyond a statement or two as to the difficulty of identification of mahogany and quarter-sawed oak in the building.
The deposition of Frazer, himself, was taken at the instance of the Connecticut Mutual Insurance Company. Yet not a question was asked him tending to negative the contention of Willey and the Otis Company that the lumber they sold him was used in the contraction of the hotel building.
The same thing is true of James Hay, the sub-contractor of Nicholson & Sons, and who dealt with Frazer. His depositions were taken, but nothing appears that militates against the claim of Willey and Otis that the mahogany and oak 'they sold Frazer was used in the hotel.
It follows that judgment must go against the Hotel Company for the amounts claimed by Willey and the Oti’s Company.
But the company is entitled to credit the sums, so to be paid, on the fund which is reserved in its hands as due by it to Nicholson & Sons, by them to Hay, and by Hay to Frazer. The credit extends all down the line to Frazer, who, or whose other creditors herein, are only entitled to the balance that may be left in the hands of the Hotel Com *1590 pany after payment of the Willey and Otis Company’s judgments.
The Hotel Company was liable to Willey and Otis, as herein found, at and prior to the time the attachments of the Insurance Company, of Thompson, and of Johnson & Go. issued, and this being so, and the claims of Willey and Otis being debts of Frazer, and the company rerserving in its hands money due through Nicholson and Hay down to Frazer, extinguishment, in the nature of compensation, to this extent took place as between Hay, Nicholson and the Hotel Company, on the one side, and Frazer, on the other. It follows that Hay was only due, at the time of the attachment, to Frazer, and Nicholson & Sons to Hay, and the Hotel Company to Nicholson & Sons, the balance of the fund of $6,544.25, owing to Frazer under his contract with Hay, after payment of the Willey and Otis claims, and this balance was all that was seized under the attachments.
The failure of the Hotel Company to exact from its contractor the bond the law required, and to seasonably record its contract and bond in the mortgage office, forced upon it the legal assumption of these debts which Frazer had contracted with Willey and the Otis Company and had failed to pay. Being thus liable therefor and judicially compelled to pay the same, the Hotel Company may use the amount thereof as a set-off pro-tcmto as against the fund in hand still due Frazer on account of his connection with the construction of the hotel building.
C. C. 2208.
Frazer’s creditors have and could seize no greater right in the fund than he, himself, had, and his debts to Willey and the Otis Company being due, under the circumstances of this case, by the Hotel Company at the time the attachments issued, and the company having in hand this fund and reserving the same through this litigation as a protection to itself, is entitled now, on payment of the Willey and Otis claims, to credit the amount of such payments on the reserved fund.
The contention may be made, that the Hotel Company, while not exacting' from its contractor the bond the law required, did in part comply with the Act of 1894 by taking a bond for a sum largely in excess of that claimed by Willey and the Otis Company, and, thus, these creditors have no cause of complaint, are protected by the bond and must look to it, and not to the Hotel Company, for payment. If there be any force in this, and if the bond in its terms suffices, as to *1591 which we pass no opinion, it is met by the suggestion that the principals of this bond are Nicholson & Sons, and if they and their surety are condemned for the debts instead of the Hotel Company, in whose favor the bond was executed, the result would be exactly the same, for the Nicholsons and their surety could claim the same set-off as against the reserved fund that we hold the Hotel Company may.
This is so because the Hotel Company, if relieved of liability, could deliver the reserved fund in its- hands only to its ¿contractors Nicholson & Sons, through whom, and through Hay, sub-contractor, it would ordinarily descend to Frazer to whom it is due. But if Nicholson & Sons are required to pay the Otis and Willey claims, because of the liability resulting- from their bond to the Hotel Company, then could they credit the amount so paid on the fund and would owe Frazer, or his creditors, only the balance thereof. And this same right would exist in favor of the surety on the bond. C. C. 2211.
The question next arising- is what disposition is to be made of the balance remaining from the reserved fund after payment of the Willey and Otis judgments.
Three attaching creditors claim it. Those holding the junior attachments attack the right of the senior attaching creditor to it, on the ground that the principle of the marshaling of assets should be applied and enforced in this proceeding, and that if this is done this creditor (the Connecticut Mutual Life Insurance Company) would take nothing.
It appears that the Insurance Company’s debt against Frazer is secured by mortgage on valuable real property situated in Minneapolis, Minnesota. This property, or the more valuable part of it, is Frazer’s home there — the house and lot where he resides. But the homestead right is waived in the mortgage act and this is permissible under the laws of Minnesota. Other creditors of Frazer, without mortgage and waiver of homestead, can not make the property amenable to their claims. The Insurance Company may, however, under the law of Minnesota, its debt being- due, seize and sell it, in foreclosure of its mortgage, in forty-two days.
Frazer, the common debtor, is insolvent and was so prior to the inception of this litigation. He made an assignment under the insolvent laws of Minnesota.
Being in insolvent circumstances he assigned his claim against *1592 Jair.es Ilay for material furnished in the construction of the St. Charles Hotel, not to the parties from whom he had purchased the material, but to the Insurance Company, which concern, it seems, had a local domicile in Minneapolis. Whereupon the attorney there of the company hastened to New Orleans, with the result that suit was brought here and Hay garnisheed.
The company claims under the attachment thus made and not under the assignment.
This creditor, then, holding to its mortgage right, which constitutes one fund, has seized for the same debt, in a remote State, another fund belonging to its debtor.
As first attaching creditor it claims a privilege on this latter fund and priority of right to be paid out of it. If this be permitted, and the debt is satisfied, it relieves Frazer’s home property in a distant State at the expense, of other creditors of his who are here invoking the aid of the courts in the assertion of just rights.
Just there arises the demand for the marshaling of assets.
Lord Eldon said a long while ago that the marshaling of- assets meant “where a person.having two funds shall not by his election disaxipoint the party having only one fund.” Aldvide vs. Cooper, 8 Ves. 308.
' The doctrine of marshaling of assets rests upon equity and natural justice.
There is no express law in Louisiana governing the same, but, because our courts, are courts of equity as well as of law (C. C. 21), it is recognized here as it is in every enlightened system of jurisprudence.
The District Court had, and this court has, the jurisdiction to deal with the parties before it as law and equity require. Hayden, Syndic vs. Yale & Bowling, 45 La. Ann. 367.
Where a court is called upon to enforce a right it may avail itself of its jurisdiction over the person to do justice relative to a subject matter beyond its territorial jurisdiction. And this is so even though lands be affected by the decree. McDowell vs. Reed, 3 La Ann. 391; 45 La. Ann. 368.
The Insurance Company, in the instant ease, by the institution of its attachment and the seizure of a fund subject to the jurisdiction of the court whose aid it invokes, brought itself within the limits of that *1593 jurisdiction and amenable to its decrees by process in personam, quoad the enforcement of any right it seeks here. That is to say, having invoked the aid of the court here to seize under writ of attachment certain credits of its debtor located here, it brought itself within the jurisdiction of the court to that extent that the court may say to it, “before you are permitted to make amenable to your claim the fund here as to which you had no other status than that of ordinary creditor on a footing with other ordinary creditors seeking to be paid out of the same fund, you must first proceed to exhaust your recourse against the property in Minnesota upon which you exclusively have a mortgage or pledge. And should any balance remain due to you after such action in Minnesota, then you will be heard here to assert your claim to be paid such balance by priority, as first attaching creditor, out of the fund here.”
See Cole vs. Cunningham, 142 Mass. 47; 134 U. S. 107.
We maintain the authority of this court to restrain persons, who come within its territorial limits and submit themselves to its jurisdiction, from doing anything abroad, which, if done, would work hardship and injustice on others here equally entitled to the protection of the court and who are equally invoking its aid. And, on the same grounds, we maintain its authority to deny to such persons its (the courts) aid to do what is sought to be done here until such time as they cease to abstain from doing abroad that which, if done, would prevent injustice and hardship to others here who seek the protection and aid of the court. Phelps vs. McDonald, 99 U. S. 298; Massie vs. Watts, 6 Cranch, 148; Pennoyer vs. Neff, 95 U. S. 714; Corbitt vs. Nutt, 10 Wall, 464; 11 So. Rep., 777; 45 La. Ann. 372; Story’s Eq. Juris., §§ 899, 900.
In the first case cited (99 U. S., 298) it was held that “although a court of equity has not within its territorial jurisdiction the real or the personal property which is the subject matter in controversy, it may, having the necessary parties before it, compel, by appropriate process, the performance of every act, which, if done voluntarily by them according to the lex loci rei sitae, would give full effect to its decree in personam.” And, further, it was said (p. 308) : “Without regard to the situation of the subject matter, such courts consider the equities between the parties, and decree in personam according to those equities.”
*1594 . We hold, therefore, that the Connecticut Mutual Life Insurance Company is in court for all purposes connected with Frazer’s indebtedness to it, in so far as the collection of that indebtedness may affect any party to the suit.
It has placed itself in personam before the court and is subject to its jurisdiction to be made to do equity. Its debtor, Frazer, is insolvent. The company is a secured creditor, with real estate mortgage security at the place of their common domicile. The creditor must first exhaust its security in Minnesota and apply the proceeds to the diminution of its claim before it can litigate to final determination here its rights to priority of payment, over other creditors, out of the fund of which the court here is seized.
And for this purpose a reasonable time should be given it.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered in the first instance, it is now adjudged and decreed that C. L. Willey and the Otis Manufacturing Company do have and recover of Peter Y. Frazer and the St. Charles Hotel Company severally the sums mentioned in their petitions respectively, with interest as therein stated and costs of both courts incurred in the suits brought by said Willey and said Otis Company — the same to be paid but once.
It is further ordered, etc., that the St. Charles Hotel Company, upon paying the amounts herein awarded against it, is entitled to credit the same upon the fund of six thousand, five hundred and forty-four and 25-100 dollars reserved in its hands, and to have an acquittance therefor as against Nicholson & Sons, James Hay and Peter Y. Frazer; that Nicholson & Sons are entitled to an acquittance therefor as against James Hay and Peter Y. Frazer; and that James Hay is entitled to an acquittance therefor as against Peter Y. Frazer and his creditors.
It is further ordered, etc., that the balance of said fund, left over after satisfaction of the judgments of Willey and the Otis Manufacturing Company, shall be paid by the St. Charles Hotel Company, through Nicholson & Sons, to James Hay, to be deposited, by the latter, in his capacity as garnishee, in the judicial deposit fund of the trial court, there to remain subject to the further order of the court.
It is further ordered, etc., that further proceedings, against the sum *1595 so deposited, by the attaching creditors, the Connecticut Mutual Life Insurance Company, I3oyd N. Thompson and W. W. Johnson & Co., be suspended for the present, and that the said Connecticut Mutual Life Insurance Company be given a reasonable time in which to exhaust its recourse against the Minnesota property mortgaged to it, as hereinbefore set forth, before seeking to subject said fund to payment of its claim, and that whatever sum is realized from the mortgaged property in Minnesota be credited on the indebtedness of Peter Y. Erazer to it as herein declared on.
It is further ordered, etc., that this cause be remanded to the court a qua to be proceeded with according to the views herein expressed and this decree — it being the intention that the three attachment suits of the Connecticut Mutual Life Insurance Company, B. N. Thompson and W. W. Johnson & Co. against Peter V. Frazer remain consolidated for the purpose of trial, and that as between these litigants there be a trial on the merits de novo.
It is further ordered, etc., that the costs of this appeal, as to the said three attaching creditors, be borne by the Connecticut Mutual Life Insurance Company.
The Chief Justice takes no part.